## HUMPHREYS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 228.

Circuit Court of Appeals, Second Circuit.

March 1, 1937.

Newton K. Fox, of New York City, for petitioner Adrian C. Humphreys.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for the Commissioner of Internal Revenue.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a petition for review of an order of the Board of Tax Appeals determining deficiencies in the income taxes of Adrian C. Humphreys, the petitioner, for the years 1927, 1928, and 1929. A companion case of W. Jule Day, a partner of Humphreys, is to be disposed of in accordance with the final decision in the present proceeding.

Adrian C. Humphreys and W. Jule Day, and their wives, Caroline G. Humphreys and Phoebe D. Day, on January 1, 1920, orally agreed to become partners under the name of Humphreys Day & Co., and they thereafter engaged in public accounting and auditing and income tax work. Mrs. Humphreys and Mrs. Day contributed the original capital to the business from their separate funds of $5,000 and $6,000, respectively. They were neither lawyers, nor accountants. Mrs. Humphreys on one occasion procured some valuable business for the firm, but neither she nor Mrs. Day are shown to have done anything else for the firm except to contribute capital. Humphreys and Day were members of the Bar of Kentucky and the former was also a certified public accountant of the State of North Carolina and a member of the Bar of the Supreme Court of the United States. He was likewise admitted to the New York Bar in January, 1924. Day was not a member of the New York Bar but had been admitted to the Bar of the District of Columbia. Both men were admitted to practise before the Board of Tax Appeals. In the course of their copartnership they prosecuted some, but comparatively few, suits in the United States District Courts and in the United States Court of Claims, but never were engaged in any litigation on the law or equity side of the courts of the State of New York.

On January 4, 1923, Humphreys, Day, and their wives entered into an agreement in writing to form a partnership under

the name of Humphreys & Day which provided that they "are and shall conduct business as co-partners in handling income tax matters and matters of corporate finance and also in the legal and general accounting business." It also provided that the copartnership theretofore formed should be continued for ten years subject to dissolution, modification, or extension by mutual agreement. It recited that the parties had theretofore contributed varying amounts of capital to the copartnership, that their capital contributions should thereafter be in equal proportions, and that the total of such capital contributions should never be reduced below $100,000. It further provided that all profits and losses were to be shared in the following proportions:

Adrian C. Humphreys, 27½ per cent.
W. Jule Day, 22½ per cent.
Caroline G. Humphreys, 27½ per cent.
Phoebe D. Day, 22½ per cent.

That Humphreys and Day should give all their time and attention to the business and that their wives should give so much of their time as the duties assigned to them should require. There was a further provision for the continuation of the business in the case of the death of one of the parties and for the terms under which it should be continued. Upon the termination or dissolution of the partnership the assets were to be divided among the four partners in equal proportions.

The partners' respective accounts were credited with $30,000 or an aggregate of $120,000, and these accounts remained thus fixed until the liquidation of the partnership in the year 1928 when distribution of the assets was effected, leaving only unfinished cases to be settled. Mrs. Humphreys and Mrs. Day maintained separate bank accounts with banking institutions separate from those of their husbands. Litigations arose between Day and his wife and Humphreys and his wife over the partnership affairs, as the result of which a receiver of the partnership was appointed by the New York Supreme Court and a referee designated to state the accounts of the firm.

The records of the partnership showed that it employed fourteen accountants, none of whom were lawyers and all but two of whom had been employed at some time by the Bureau of Internal Revenue. It also employed at least eighteen other persons, twelve or fifteen of whom were employed at one time in the New York office.

The four partners reported their distributive shares of the income of the partnership in their individual returns for each of the years 1923 to 1929, inclusive, which returns were audited by the Commissioner and, with the exception of the years involved in this proceeding, were approved. The Commissioner assessed the distributive shares of the firm income which belonged to the wives as the income of the husbands and determined deficiencies for the years 1927, 1928 and 1929 upon that basis. The Board of Tax Appeals held that the amounts which the Commissioner transferred to the income of the husbands were earned through the personal services of the latter and that the husbands could not relieve themselves of tax liability by an agreement that their wives should share equally in the earnings, even though such a contract were binding as between the parties.

The opinion of the Board stated that the arguments against treating the earnings as belonging wholly to the husbands "would be persuasive of the ultimate conclusion contended for by the petitioners if we were considering taxability of the distributive shares of a trading partnership the income of which is dependent upon the use of capital." It also stated: "The picture here presented, however, is that of a partnership deriving its income from personal service."

The expenses of the partnership were $11,000 for the first year. They had increased to $269,000 in 1925, and in 1927 were $145,778.02, and in 1928 $143,683.66. The current earnings of the firm were distributed from time to time each year by checks to the four partners.

As business came into the office of Humphreys & Day, the manager Barnett would allocate the work to the staff who would secure the necessary data by examination of books and records of the customers. After this information was accumulated the particular matters would be turned over to Barnett for review. Thereafter the necessary briefs, papers, or returns would be prepared and filed with the Collector or with the Treasury Department. Likewise in the course of the business various reports and audits of business would be prepared for the customers. The testimony indicates that there were problems in the work of the concern which

involved the interpretation of the revenue statutes and that the solution of these problems was a part of the accounting work and was charged for in connection with it.

■ At the time of the termination of the partnership on December 31, 1928, the capital accounts were closed out by transferring the $30,000, credited to each, to the drawing accounts of the four partners. The Board treated the net earnings distributed to the wives as though they were wholly derived from the work of their husbands and as in effect assignments by the latter of their salaries or other income. If the wives were no more than assignees of those earnings, the husbands could not escape taxation by such a device. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L. Ed. 731; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665. Though the present case is one where the services of Humphreys and Day contributed to the earnings of the firm, the capital furnished by their wives was what started the business, and this and the additional capital which they later contributed helped to furnish the moneys necessary to conduct it. The work of accountants and income tax experts was substantially and doubtless mainly performed by the large staff employed by the firm doubtless under the personal direction of Humphreys and Day. The wives not only furnished capital but, together with their husbands, acted as principals in the employment of the staff and were each subject to personal liability for all debts of the large accounting business. They were in every sense partners in the business sharing in its profits and liable for its losses. To treat them as mere assignees of the income of partners who performed all the work we think is to ignore the real situation. They not only contributed a substantial amount of capital (at first all the capital) but helped to furnish the large staff which must have done a great part of the work. We find no justification for treating their profits from the firm as income derived from the earnings of their husbands. Indeed, we do not understand that counsel for the Commissioner now contend that there was not a genuine partnership between Humphreys and Day and their wives. What they do insist upon is that because the wives were neither lawyers nor accountants it is against public policy to recognize them as having the relation of partners for purposles of taxation. This contention does not

seem to have prevailed or even to have been mentioned by the Board in its opinion. How any accountant doing income tax work could do his business at all without a knowledge of the statutes, decisions, and treasury rulings in income tax matters is hard to see, and we should hesitate to hold that the necessity of such knowledge would require every member of a firm of accountants to be a member of the bar. And assuming that some part of the business involved solving problems or answering questions requiring a knowledge of income tax law, Humphreys and Day were each lawyers and the former was a member of the New York Bar who could presumably guide the staff in dealing with legal questions. But, in any event, we cannot imagine how the derivation of profits from the partnership, if some small part of them should be subject to criticism because arising from giving legal advice in connection with accounting, would deprive the two wives of their shares of the earnings or result in a transfer or attribution of those shares to the husbands. It might as well be argued that a stockholder of a trust company which gave some advice as to estate matters which ought to have been turned over by the company to a lawyer would forfeit his dividend.

We do not regard Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, as justifying a disregard of the partnership relations. In that case 1,000 shares of stock belonging to a corporation, wholly owned by the taxpayer, were transferred to a new corporation which issued all its stock to him. If the transaction effected a reorganization under section 112 of the Revenue Act of 1928 (26 U.S.C.A. § 112 and note), his tax liability would be lessened. The Supreme Court held that the transaction in that case was not the kind of reorganization contemplated by the statute. As soon as the new corporation received the stock it dissolved and distributed it to the taxpayer as a liquidating dividend. Thus the attempted reorganization was no part of the business activities of the corporations concerned, but a short-lived arrangement having no possible function other than an avoidance of taxes. In the present case, however, the partnership was formed and continued for years. Through the risk of capital and personal credit Mrs. Humphreys and Mrs. Day for many years received business profits, as members of the firm, upon which they are plainly subject

to taxation. How these profits can be shifted to their husbands and treated as primarily the earnings of the latter is beyond our comprehension. The question is whether there was in fact a partnership or only an assignment of the husbands' earnings. The agreement of the parties and the contribution by the wives of a substantial amount of the capital of the business made them partners in every sense. If this be so, the profits which they received from the firm were income derived directly from it business and hence not taxable against their husbands.

The order is reversed and the proceedings remanded, with direction to assess and tax the profits of the copartnership against the four partners according to their respective interests.