## TOWER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9868.

Circuit Court of Appeals, Sixth Circuit.

April 2, 1945.

Oscar E. Waer, of Grand Rapids, Mich., for petitioner.

S. Dee Hanson, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and Melva M. Graney, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, MARTIN, and Mc-ALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

This case, involving the question whether a wife's share of the earnings of a partnership are taxable to her or to her husband from whom her interest in the partnership is derived, is a close one, and falls somewhere in the area between the Second Circuit's decision in Humphreys v. Commissioner, 88 F.2d 430, and decisions in the Fifth and Tenth Circuits in Mead v. Commissioner, 131 F.2d 323, and Earp v. Jones, 131 F.2d 292, respectively.

The taxpayer, in 1933, owned 425 shares out of a total of 500 shares of the R. J. Tower Iron Works, Inc., the remaining 75 shares being held by two employees of the corporation, Amidon having 50 shares and Lawrance having 25 shares. In 1934 the taxpayer purchased Lawrance's stock and made a gift of 5 shares to his wife, who was made a director and vice-president of the corporation, so that subsequently, and until the tax years here involved, the taxpayer owned 445 shares of the company.. In July, 1937, after some discussion with his wife and Amidon in regard to the advisability of dissolving the corporation and setting up a partnership, and all concluding that this would result in tax savings and avoid the necessity of filing multitudinous corporate reports, it was decided that the taxpayer would transfer some of his stock of the corporation to his wife, so that

she would be able to contribute a substantial part of the partnership capital. In furtherance of this decision, the taxpayer, on August 25, transferred 190 shares of his corporate stock to his wife, upon condition that she would contribute the corporate assets, which the shares represented, to the new partnership. The transfer was recorded on the corporate books, a new stock certificate was issued and delivered to the wife, and the taxpayer filed a gift tax return and paid the taxes shown to be due thereon. Thereafter, the corporation was completely liquidated and a limited partnership agreement entered into between the taxpayer, his wife, and Amidon, for the purpose of carrying on the business of the corporation, all of the assets of which were transferred to the partnership.

The partnership agreement was to be for 20 years, unless sooner terminated by a majority in interest of the partnership capital. The taxpayer and Amidon were general partners, and Mrs. Tower was a limited partner. Tower's contribution to partnership capital was $81,600; his wife's was $62,400; Amidon's was $16,000. The partners were to share in the profits and losses in proportion to their respective contributions to capital, except that Mrs. Tower was not to be liable for losses in excess of her contribution. The general partners were to have the exclusive management and control of the business, the right to fix salaries, and were to distribute the net profits for each year at such times as they might determine. The taxpayer's share of the partnership profits amounted to 51 per cent, his wife's to 39 per cent, and Amidon's to 10 per cent. Amidon had formerly been employed by the corporation as bookkeeper and continued to perform similar work for the partnership until the early part of 1938 when, by reason of additional responsibilities and duties devolving upon him because of increase in the volume of business, the Towers felt that he was entitled to a larger share in the profits, and they were increased on September 1, 1938, from 10 per cent to 25 per cent, with proportionate decreases to the Towers. It was then also agreed between Tower and Amidon, that neither would draw salaries for future services.

Mrs. Tower, as vice-president and a director of the corporation after the withdrawal of Lawrance, attended directors' and stockholders' meetings, but was not actively engaged in the business, nor did she render service to the partnership or draw salary therefrom. Prior to the partnership agreement the taxpayer gave his wife a regular allowance of $75 a week for household expenses, and this allowance continued during the taxable years. She had a savings and checking account at the bank, wherein she deposited some of the money received from the partnership, and kept some in the form of cash in a safe at home. Following the bank holiday, the taxpayer also kept money and papers in the safe, but used a separate box. In 1940 the Towers built and furnished a summer cottage, Tower contributing approximately $2,000 thereto, and his wife $3,000. During that year Mrs. Tower also repaid her husband some $1,400 which he had advanced for the payment of her income taxes and other expenses. They bought war bonds together, each contributing one-half of the purchase price. The taxpayer performed the same services for the partnership that he had previously performed for the corporation. Upon the basis of these circumstances substantially as found by the tax judge, it was concluded that the gift of corporate stock by the taxpayer to his wife in 1937, was not valid and complete, in that the wife did not gain full dominion and control over the shares, so that she was not a bona fide partner in the business during the taxable years. Deficiencies asserted by the Commissioner in Tower's income tax for the fiscal years ending July 31, 1940, to and including July 31, 1941, based upon the inclusion in his income of the amounts withdrawn by or credited to the wife from the earnings of the partnership, were therefore sustained.

The tax judge reasoned that the taxpayer did not relinquish control of the stock transferred to his wife since she could use it in but one way, namely, to place corporate assets, which the stock represented, into the partnership. Because of the condition attached to it, the transfer did not constitute a valid and complete gift of shares. There was no purpose and intent to vest absolute dominion over the shares in the wife, and since she lacked untrammeled freedom in their disposition, she made no capital contribution to the partnership, and was not a bona fide partner. The conclusion that the transfer was invalid as a gift is rested on the ground that title, dominion, and control of the subject matter were not, in praesenti, conveyed. Reliance is chiefly placed on Edson v. Lu-

cas, 8 Cir., 40 F.2d 398, where essential elements of a gift inter vivos, are catalogued. In that case, however, the conditions attached to the gift went far beyond that here involved, including reversion of the subject matter to the donor. Notwithstanding, the gift was sustained, Judge Sanborn, after an exhaustive analysis of cases, arriving at the conclusion that a gift is not invalid because of conditions imposed by the donor which are not inconsistent with the immediate vesting of such legal title in the donee. The case is authority for the validity of a gift, even though coupled with a condition subsequent which doesn't interfere with the vesting of title in the donee. Such was the gift here involved.

█ Granted, however, that, because of the condition, Tower's gift was not complete at the time he gave the shares to his wife, the condition was almost immediately performed. The gift was then both valid and complete, vesting title in the wife to the corporation assets contributed by her to the partnership capital. The question that remains is whether the gift was bona fide or a mere sham. We know of no rule, statutory or otherwise, which requires that a gift within the family must, without more, be ignored for tax purposes, and have frequently given effect to such gifts. Commissioner v. Olds, 6 Cir., 60 F.2d 252; Rose v. Commissioner, 6 Cir., 65 F.2d 616; Tracy v. Commissioner, 6 Cir., 70 F.2d 93.[1] It is true that in family trust cases stemming from Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, any arrangement by which income is spread among the members of a single family is subject to severe scrutiny, but adjudication has invariably been based upon the measure of control reserved by the donor over the subject matter of the gift, in order to determine whether the giving was actual or unreal. So it is also in the cases where wholly-owned corporations are formed or utilized for the purpose of establishing a reorganization or a realized loss or gain, as in Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, and Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406. The control of the corporation may be so absolute that neither gain nor loss is realized, and the taxing authority may treat the transaction as really it is, rather than as what it seems to be.

Control over the subject matter of a gift may, by express reservation or subsequent exercise, be so substantial as to support a conclusion that no gift was either made or intended. This was so in Mead v. Commissioner, supra, and Earp v. Jones, supra, where, in each case, no substantial change was effected by a conveyance from a taxpayer to his wife of an interest in his business, with no actual distribution to the wife from the earnings of the partnership, and continued treatment of the wife's share of earnings by the taxpayer as though they were his own. In each case the tax court was held to have been justified in treating the gift as lacking in bona fides, and a mere artifice. In Humphreys v. Commissioner, supra, where wives were the partners of their husbands in a public accounting and auditing business to which the wives had contributed capital, it was sought to allocate earnings withdrawn or credited to the wives as income of their husbands, on the ground, here also relied upon, that they contributed nothing to the activity of the partnership, the income of which was earned wholly through the personal services of their husbands. But the wives had contributed capital substantially used in the activity, and they were held to be, in every sense, partners, sharing in its profits and liable for its losses. No justification was perceived for treatment of their profits from the firm as income derived from the earnings of their husbands. It is important to note that in the opinion of the Board of Tax Appeals, in that case, it was conceded that the conclusion contended for by the taxpayers would be persuasive if the partnership had been a trading partnership rather than one deriving its income from personal service. The partnership here involved is undoubtedly in that category, even though its primary function may be manufacturing.

█ The respondent, however, argues, and the tax judge concluded, that the present partnership serves no business purpose,

---

[1] In cases reviewed by the full panel, the tax court generally has held that a valid gift of an interest by a husband to his wife gives the wife a separate right to the income, Scherer v. Commissioner, 3 T. C. 776; Johnston v. Commissioner, 3 T. C. 799; Zukaitis v. Commissioner, 3 T.C. 814; Smith v. Commissioner, 3 T.C. 894, though the single judge, here deciding, there dissented.

and so is kin to the corporation adjudicated, for tax purposes, as unreal in Higgins v. Smith, supra, and this on the ground that the change added no new capital to the business, and that after the formation of the partnership the business had the same capital, assets, liabilities, management, plant, customers, employees, and name as had the predecessor corporation. It is a novel concept. Were it to prevail then no matter what the advantages might be, tax-wise or otherwise, in transforming a close-ly held corporation into a partnership, such change would never, for tax purposes, be recognized. Once a corporation always a corporation, in the eyes of the taxing authority. That there are business advantages, aside from tax savings, under certain circumstances, in doing business as a partnership rather than as a corporation, we have no doubt. Even if not, it cannot reasonably be said that a saving in taxes may not, in and of itself, be a legitimate business purpose if the transformation is from one form of business organization to another, and not mere artifice. Clearly, this was so held in Chisholm v. Commissioner, 2 Cir., 79 F.2d 14, 15.

It is somewhat late in the history of tax legislation and adjudication, to urge that there is an unlawful purpose in a taxpayer's election of that form for doing business which is more advantageous to him. It is true that the government may look at actualities, Higgins v. Smith, supra, and may determine that the form employed is unreal or a sham, and if so, disregard the effect of the fiction. But as Judge Learned Hand said in the Chisholm case, supra, "The question always is whether the transaction under scrutiny is in fact what it appears to be in form * * * a contract may be intended only to deceive others; an agreement may have a collateral defeasance. In such cases the transaction as a whole is different from its appearance." As in the Chisholm case, the purpose of the case at bar was to form an enduring firm which should continue for 20 years, and has so continued through the tax years and since.

Returning to the facts of the case, there is no evidence upon which to base a conclusion that either the gift of corporate shares to the wife, or the organization of the partnership, was unreal and a mere artifice. The taxpayer exercised no such control or dominion over the monies withdrawn by the wife from the earnings of the firm as to demonstrate a "collateral defeasance." They were deposited in her own bank account and used, so far as the record discloses, at her own volition and for her own purposes. The fact that she repaid the taxpayer for advances made by him in the payment of her income taxes and other expenses, emphasizes the separateness of the wife's funds from those of her husband, rather than their joint character. That each contributed to the purchase and furnishing of a summer cottage to be used by the wife's family, is not so unusual as to indicate, in absence of other circumstances, control by the husband over the income of the wife from the partnership. Her share of firm earnings was subject to withdrawal by her alone. It is a far cry from the facts of the present case to those of Johnson v. Commissioner, 2 Cir., 86 F.2d 710, where the taxpayer gave borrowed money to his wife to set up a trust for the payment of insurance on his own life, borrowing the corpus from the trustee with interest payments voluntary.[2] We are fully cognizant of the finality of determinations by the tax court, but we do not understand that Dobson v. Commissioner, 320 U.S. 489, 64 S. Ct. 239, 88 L.Ed. 248, is destructive of the long-established rule that factual determinations must be supported by evidence, and that administrative decisions must have "warrant in the record."

Reversed and remanded to the tax court for further proceedings in conformity herewith.

MARTIN, Circuit Judge (dissenting).

This case was, in my judgment, correctly decided by the Tax Court upon its findings of fact, amply supported by evidence, that the petitioner's wife made no actual

2 Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, but sustains the taxation to the donor of assigned future income, following Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, and Helvering v. Eubank, 311 U.S. 122, 61 S. Ct. 149, 85 L.Ed. 81. The legal effect of the difference between grants of income and a real transfer of the res which produces income is there still recognized, as it also is in Helvering v. Douglas Stuart, 317 U.S. 154, 168, 63 S.Ct. 140, 87 L.Ed. 154.

contribution, either of capital or of services, to the partnership, had no voice in its conduct, and received a portion of the profits, not really as a partner, but only by virtue of her marital relationship; and that there was no real partnership between the petitioner and his wife for the conduct of a business enterprise. The petitioner, being the person who earned the income which was credited to his wife's account, was, therefore, taxable on the income which he sought to attribute to his wife.

In my view, the opinion of the Tax Court, moreover, conforms to the reasoning of the Supreme Court authorities which it cites, and also to the rationale of Mead v. Commissioner of Internal Revenue, 5 Cir., 131 F.2d 323, and Earp v. Jones, 10 Cir., 131 F.2d 292, both of which cases seem closely in point. Humphreys v. Commissioner of Internal Revenue, 2 Cir., 88 F.2d 430, seems to me to be far afield from the case at bar in factual circumstances.

Even were I in disagreement with the inferences drawn by the Tax Court, the strong inhibitions which, to my thinking, have been placed by the highest authority upon the function of appellate court review in a tax case of this character would prevent my concurrence in reversal. Reference is made to expressions of the Supreme Court in Dobson v. Commissioner, 320 U.S. 489, 498, 501, 502, 64 S.Ct. 239, 88 L.Ed. 248; Commissioner v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171; Commissioner v. Scottish American Investment Company, 323 U.S. 119, 124, 125, 65 S.Ct. 169; and Commissioner of Internal Revenue v. Wemyss, 65 S.Ct. 652. Cf. Merrill v. Fahs, U. S. Collector of Internal Revenue, 65 S.Ct. 655.