BEULAH H. NICHOLS, SURVIVING SPOUSE, AND ESTATE OF HAROLD E. NICHOLS, DECEASED, BEULAH H. NICHOLS, EXECUTRIX, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74982. Filed September 29, 1959.

*George V. Whittle, C.P.A.*, and *John O. Durkan, Esq.*, for the petitioners.

*Wilford H. Payne, Esq.*, for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in income tax for the calendar year 1953 in the amount of $24,618.82. The sole issue is whether a partnership existed between a medical doctor specializing in radiology and his wife from April 1, 1953, until May 10, 1954. It makes a difference in the tax due because the partnership adopted a fiscal year ending March 31. Petitioners reported the income from the partnership for the fiscal year ending March 31, 1954, in the joint return for the calendar year 1954. Respondent determined that no valid partnership existed and taxed the income from the medical practice from April 1 to December 31, 1953, to the individuals as community income for the calendar year 1953.

FINDINGS OF FACT.

Petitioners' decedent, Harold E. Nichols, hereafter called Harold, and Beulah H. Nichols, hereafter called Beulah, were husband and wife living together in Seattle, Washington, at all times pertinent to this proceeding up to the time of his death on May 10, 1954. They filed a joint income tax return on a calendar year basis for the year 1953 with the district director of internal revenue at Tacoma, Washington.

Petitioners were married in Tacoma, Washington, on March 6, 1920. Thereafter they moved to Seattle where Harold entered premedical school at the University of Washington. Subsequently, Harold attended the University of Oregon Medical School at Portland for 4 years and graduated in 1926 receiving the degree of medical doctor.

Beulah worked in various offices as a medical secretary and for the National Hospital Association during this period of time and largely paid for Harold's medical education.

After graduation they moved to Seattle where Harold interned in the Old City Hospital. Beulah continued to work in order to help finance the family.

In 1927, Harold entered into the general practice of medicine in Olympia where he remained until 1930. In 1930, Harold bought the medical practice of Dr. Baumgartner with offices located in the Stim-

son Building in Seattle for $25,000. The purchase price was obtained by borrowing on notes signed by both Harold and Beulah and guaranteed by doctor friends of theirs. Harold and Beulah moved to Seattle and Harold conducted his medical practice in these offices until his death in 1954.

When Baumgartner's secretary, who had remained in Harold's employ for several months, proved unsatisfactory, Harold asked Beulah to consider that position. Beulah accepted and continued to work in the office from 1930 to the date of Harold's death in 1954.

Harold specialized in radiology. Most of his work came from referrals of other doctors and from the various hospitals in Seattle. For some time he also did work for the Veterans' Administration.

In order that Harold could devote his full attention to his medical practice—interviewing patients, reading X-ray films, and dictating the necessary reports from these readings—the complete clerical, as well as personnel management of the office, was assumed by Beulah. All policy decisions relating to the management of the office were referred to her.

In 1946, several radiologists in Spokane and Seattle asked Harold, who had become one of the leading radiologists in Washington State, to enter into a partnership with them. Harold insisted Beulah be present at the meetings dealing with the formulation of the partnership. Despite the objection of the other doctors to her presence at the meetings and to her position at Harold's office, Harold made his entrance into the partnership dependent upon Beulah's continuing to work in his office, as he felt her services were invaluable.

Beulah felt that she was entitled to be a partner and discussed the matter with Harold. Harold agreed but, because the other partners considered it a poor policy for a doctor's wife to be part of their business, they would not consent to her admission as a partner. Accordingly, Beulah was hired as a salaried employee.

After formulation of the partnership, each doctor maintained the same offices he had occupied before in Spokane and Seattle. Beulah's duties under the partnership were much the same as before. She continued to manage Harold's office in the Stimson Building, but also had the responsibility of depositing at the end of each month in the partnership account the net collections forwarded to Harold, as senior partner, from the other offices of the partnership. The accountants for the partnership worked exclusively with her.

In April 1953, Harold was forced out of the partnership partially because of the resentment felt by the other doctors toward Beulah's dominant position in her husband's office, and because the partners felt Harold was not contributing his share to the partnership. This partnership was terminated as of March 31, 1953.

Agreeing that this was the opportunity to form a long-desired partnership between themselves, Harold and Beulah consulted their personal accountant for his advice. The accountant indicated his approval and suggested that for tax purposes the new partnership continue on the same fiscal year as the old partnership, which ended March 31 of each year.

Discussions were held with representatives of the accounting firm for the former partnership. Although the question arose whether under the Revised Code of Washington a doctor could have a partnership with a nondoctor, Harold was firm and adamant in his desire to have Beulah as a partner if possible under the law, because he felt that she had in reality become a part of his medical practice and he relied on her for many things for which he would not dare rely on anyone else in the office. An attorney was also consulted.

A decision was made to establish a new partnership of Harold and Beulah on the basis of 75/25 per cent division of capital, profits, and losses, with Harold having the 75 per cent interest because his professional status warranted his receipt of a greater share. Harold and Beulah agreed orally to form a partnership on this basis but no written partnership agreement was drawn.

The accounting firm of the former partnership set up books of account for the new partnership, using as the partnership name "Harold E. Nichols, M.D." Capital and drawing accounts were set up for each partner and the net profits for the year ended March 31, 1954, were credited to these accounts in the amounts of 75 per cent to Harold's account and 25 per cent to Beulah's account.

A partnership bank account was opened in the name of "Nichols, H. E., M.D. or B.—Special Acct.," and the receipts of the business were deposited in this account. Either Harold or Beulah could draw checks on this account. An "Employer's Application For Identification Number" was filed with the Treasury Department, Internal Revenue Service, which showed the establishment of a partnership as of April 1, 1953, under the name of "Harold E. Nichols, M.D.," and showed the names of the partners to be "Dr. Harold E. Nichols and Mrs. Beulah H. Nichols." The partnership also filed an "Application for Certificate of Registration" and an "Employer's Status Report Under Washington Unemployment Compensation Act" with the appropriate officials of the State of Washington, and an "Application For Business License" with the City of Seattle, all of which showed substantially the same information as above regarding the establishment of the partnership of Harold and Beulah Nichols. The office employees were also told of the formation of the partnership. Harold's name alone appeared on the door of the office.

Under the agreement terminating the former partnership, Harold was entitled to retain all equipment, including an X-ray machine,

furniture, and fixtures, in his office, together with all accounts receivable entered on the books of his office. The depreciated value of the tangible assets (about $3,900) was carried over to the new partnership as the capital of the partnership, which the accountants credited to Harold's account. They did not consider the capital contribution to a partnership such as this to be important and simply entered the tangible assets on the books for depreciation purposes.

The new partnership elected to report its income on a fiscal year basis ending March 31, in part, at least, to avoid the doubling up of Harold's share of the old partnership income for the entire fiscal year ending March 31, 1953, with the medical income for the balance of the calendar year 1953. Partnership returns for the fiscal years ended March 31, 1954, and March 31, 1955, prepared by the accountants, were filed in the name of "Harold E. Nichols, M.D." and showed the business to be the practice of medicine and radiology. The gross receipts from the business or profession reported therein were $89,948.51, and the net income reported was $48,061.65. The respective partnership shares of income were reported as $36,046.24 for Harold and $12,015.41 for Beulah. The partnership return for the fiscal year March 31, 1955, was a final return and included the medical income from April 1, 1954, to May 10, 1954. Beulah signed these partnership returns following Harold's death in 1954. The entire income of the partnership was from the practice of radiology.

After termination of the old partnership, the division of services between Harold and Beulah remained much the same as it had been under the old partnership, although Beulah's responsibilities increased to some extent. Harold was responsible for the professional and technical operations of the business, interviewing patients, at times taking X-rays or supervising the technicians taking X-rays, reading the X-ray films, and dictating the necessary reports. Beulah had complete charge of the managerial, clerical, personnel, and financial affairs of the office and the business. She also helped prepare patients for X-rays at times and checked Harold's reports against the X-ray films and the dictaphone.

Harold's health declined rapidly in 1953 following the jolt of his dismissal from the previous partnership. Petitioners moved from their home to an apartment to make his life easier.

In late 1953, Harold was no longer able to devote full time to the office and a doctor was hired to assist him. Harold became more dependent upon Beulah and her responsibilities increased. She usually worked 7 days a week, having the sole management of the office of 7 employees. She made all appointments, handled the billing and banking, kept the books, purchased supplies, paid the bills, dealt with the accountants, checked Harold's reports, and often took the X-ray films home for Harold to read and dictate reports there.

Beulah did not draw a salary from the new partnership. She deposited the earnings of the firm in a partnership account, and as the need arose transferred funds from the partnership account to a joint personal bank account on which both she and Harold drew checks. At times Beulah drew funds on the joint account to purchase real estate and other items in her own name without first consulting Harold.

Upon his return from a trip in April 1954, Harold became seriously ill and died May 10, 1954. Beulah closed the office a month later and disposed of the practice.

The joint return filed for Harold and Beulah for the calendar year 1953 included Harold's share of the income from the former medical partnership for the entire fiscal year ending March 31, 1953, and also the salary of Beulah from that partnership to date of termination. No medical income from business after March 31, 1953, was included in that return but was included in the joint return for the calendar year 1954.

Washington is a community property State and Harold and Beulah did not enter into any written agreement for holding or disposing of their community property in a manner other than as provided in the community property law of the State.

In a notice of deficiency, respondent determined that the income from the practice of medicine and radiology for the period April 1, 1953, to May 10, 1954, was community income of husband and wife; that it was not partnership income as reported in the above-mentioned partnership return. He also determined that the calendar year had been established as the taxable year for Harold and Beulah to report their community income. As a result, in the deficiency notice the income from the medical practice from April 1, 1953, to December 31, 1953, was included as taxable income of petitioners for the calendar year 1953 and was eliminated from the taxable income reported for the year 1954.

Harold and Beulah formed a bona fide partnership for the conduct of Harold's radiology practice as of April 1, 1953.

OPINION.

The precise question for our decision is whether the purported partnership between Harold Nichols, a radiologist, and Beulah Nichols, his wife, who managed the doctor's office and the business end of the practice, will be recognized as an entity entitled to use a fiscal year for accounting and reporting its income. Because of the community property laws of Washington and the privilege of husband and wife to file joint returns under the internal revenue law, we do not have before us the question involved in most family part-

nership cases, of which member of the family will be taxed with the income of the partnership.

A partnership is required to make a return of its income for the taxable year of the partnership, that is, for its annual accounting period, fiscal year or calendar year as the case may be. The partnership itself is not subject to tax but the partners are required to include in their return for the taxable year within which or with which the taxable year of the partnership ends their distributive shares of the partnership income. See sections 181–187, I.R.C. 1939, and Regulations 118, sections 39.181–187, applicable here. A partnership may report its income on a fiscal year consisting of 12 months ending on the last day of any month other than December, provided it has established an accounting period covering the same time and has kept its books in accordance therewith. Sec. 41, I.R.C. 1939, and Regs. 118, sec. 39.41.

The evidence in this case establishes that the purported partnership formed by Harold and Beulah was formed as of April 1, 1953, and that it chose a fiscal year for accounting purposes beginning on April 1 and ending on March 31, kept its books and records on the basis of that accounting period, and filed a return for its first fiscal year ending March 31, 1954, reporting its income for the period April 1, 1953, to March 31, 1954. Consequently, if the partnership was valid for tax purposes, the income of the partnership for that entire period was taxable to the partners in their calendar year 1954. Respondent determined that the partnership was a sham and invalid and refused to recognize it for tax purposes. He therefore taxed the income from the radiology practice for the period April 1, 1953, to December 31, 1953, to Harold and Beulah as community income for the calendar year 1953.

Section 3797(a)(2), I.R.C. 1939, defines partnership and partner as follows:

The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. A person shall be recognized as a partner for income purposes if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person.

The Supreme Court said in *Commissioner* v. *Tower*, 327 U.S. 280, and repeated in *Commissioner* v. *Culbertson*, 337 U.S. 733, that a partnership is created "when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and where there is community of interest in the

profits and losses"; and also that the question whether the family partnership is real for income tax purposes depends on "whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits and losses or both. And their intention in this respect is a question of fact." In the *Culbertson* case, the Court emphasized that the question is subjective—

whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.

Considering all the factors mentioned in the above quotations in the light of the evidence in this case, we have concluded that Harold and Beulah really and truly intended to conduct the radiology business as a partnership with Harold providing the technical knowledge, skill, and legal qualifications for conducting the business, and Beulah providing the managerial, clerical, financial, and accounting services for the business, and that they carried out this intent.

Except possibly for the fact that the income was derived solely from fees which only Harold was licensed to charge and collect, there was every reason for Harold and Beulah to form a partnership to carry on this business when Harold was eliminated from the old partnership. Beulah had worked with him throughout his medical career and undoubtedly contributed a great deal to his success. She intended to continue devoting her full time to the office and it was only natural that with the other doctors not around to object she would exercise even more control over the business and financial affairs of the office than she had before. While no direct charge was made to patients for Beulah's services, they nevertheless played a necessary and integral part in the production of the income of the partnership. We know of nothing in the tax law which requires that the services of a partner be reflected directly in the charges which produce the partnership income in order that he or she be recognized as a partner for tax purposes.

Beulah had also contributed to whatever capital was needed for and put into this business, both because her efforts had helped pay for it and because she was part owner thereof under the community property laws of Washington. While the business of providing medical services would usually be considered a personal service business in which capital is not normally considered a material income-producing factor, X-ray equipment and supplies were necessary for Harold to perform this particular type of personal service, and it

might well be said that the capital contributed here was a material income-producing factor.

As proof that Harold and Beulah actually formed a partnership and conducted the business in that form, we have the testimony to that effect of Beulah, Kay Farrington, a long-time employee in the office, and of the two accountants who were consulted and set up the books for the partnership; documentary evidence that applications were filed with various State and Federal agencies in which it was stated that the new business was a partnership comprised of Harold and Beulah as partners; and uncontradicted evidence that the books were set up on a partnership basis and capital accounts were established for each partner, that a partnership bank account was opened into which all the income of the business was deposited and upon which both partners were authorized to draw, and that Beulah had almost complete control of the management and financial end of the business.

It is true that the partnership agreement was oral, but that is not fatal. *Seattle Renton Lumber Co.* v. *United States*, 135 F. 2d 989 (C.A. 9). The fact that the business was conducted in Harold's name alone and only his name appeared on the door of the office was natural in view of the fact that only Harold was licensed to practice medicine. They did not intend that Beulah participate in the medical services rendered, but this does not preclude the intent to conduct the business as between themselves as partners. The services rendered by Beulah, while of a different nature from those rendered by Harold, were of sufficient importance to justify her participation in the profits of the business, and this she did.

Respondent argues that the partnership was a sham because it had no business purpose and was established for the sole purpose of tax avoidance. We think the evidence shows that the partnership was not a sham but was established in fact—whatever the purpose in forming it might have been. It is quite likely that one of the principal reasons for forming the partnership was to continue the fiscal year basis of reporting income used by the old partnership and thus avoid having taxed in 1 year the income of about a year and three-quarters. But this is not the kind of tax avoidance condemned by *Lucas* v. *Earl*, 281 U.S. 111, and other family partnership cases, where the purpose was to have the income taxed to someone other than the person who earned it. Undoubtedly tax considerations play a large part in the decision of many taxpayers to choose a fiscal year for reporting income. So unless there is some other reason this partnership was invalid for tax purposes, we do not think this so-called tax avoidance purpose would justify ignoring the partnership and denying it the right to choose a fiscal year for accounting and reporting its income.

Respondent also argues that there was no business purpose for

forming this partnership within the rule of the *Culbertson* case. We do not understand the phraseology used in the *Culbertson* case, "acting with a business purpose," to mean that the formation of a partnership was vital or even beneficial to the conduct of the business. If the individuals decide to pool their capital and/or efforts in a business and choose the partnership form for conducting the business and actually conduct it in that form, we believe that is what is required. The fact that the business could have been conducted just as well in some other form is not controlling. That is only one factor to be considered in determining the true intent of the parties. As said at page 744 of the *Culbertson* opinion:

If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient.

Respondent suggests that because of the professional nature of the business, the statutory requirements as to licensing and prohibition against fee splitting by a professional practitioner, and also because of the community property laws of Washington, it is doubtful that a partnership between Harold and Beulah would be held valid under Washington law. He cites no authorities to support this suggestion and we are not convinced from reading the Washington statutes cited that this would be true. The evidence tends to indicate that the partnership was recognized by the State of Washington—at least it was reported as such to State agencies—and there is no evidence that the State questioned this status. But we do not have to decide the legality of this partnership under Washington law because, as respondent admits, it would go only to the bona fides of the partnership agreement, because it is well established that the legality or illegality of the partnership under State law is not determinative of the question whether a partnership exists for Federal tax purposes. *Commissioner* v. *Tower, supra;* Rev. Rul. 58–243, 1958–1 C.B. 255, and cases cited therein. And with respect to its effect on the bona fides of the partnership, the independent accountant consulted by Harold testified that when he raised the question of the legality of such a partnership, Harold insisted that he wanted to form this partnership if it was at all possible to do so.

The only case cited to us involving the validity, for tax purposes, of a husband and wife partnership where the income was from professional fees is *Humphreys* v. *Commissioner*, 88 F. 2d 430 (C.A. 2), reversing 33 B.T.A. 1081. In that case two lawyers, one of whom was also a C.P.A., formed a partnership with their wives for the conduct of a public accounting and auditing business specializing in Federal tax matters. The wives contributed the original capital to the firm,

but neither was a lawyer or an accountant and neither participated actively to any extent in the conduct of the business. The Board of Tax Appeals, relying on *Lucas* v. *Earl, supra,* found that the partnership derived its income from personal services and that the husbands could not relieve themselves of tax liability thereon by an agreement that their wives share in the earnings. The Court of Appeals for the Second Circuit reversed, recognizing that the capital contributed by the wives was necessary for the conduct of the business and they were in every sense true partners and not just assignees of the income of their husbands. The court said at page 432:

> We find no justification for treating their profits from the firm as income derived from the earnings of their husbands. Indeed, we do not understand that counsel for the Commissioner now contend that there was not a genuine partnership between Humphreys and Day and their wives. What they do insist upon is that because the wives were neither lawyers nor accountants it is against public policy to recognize them as having the relation of partners for purposes of taxation. This contention does not seem to have prevailed or even to have been mentioned by the Board in its opinion. * * *

While the *Humphreys* case is distinguishable on the facts from this case, see *Thomas M. McIntyre,* 37 B.T.A. 812, and was concerned with the taxation of income between partners rather than the validity of a partnership for purposes of accounting and filing returns, it does indicate that the Court of Appeals felt the recognition, for tax purposes, of a partnership between a professional person and nonprofessional person in a business wherein the income was all derived from professional fees does not violate public policy.

We are not unmindful of the statement made by this Court in *Robert P. Scherer,* 3 T.C. 776, 793:

> There is a line of cases which holds that a husband whose earnings are from personal services such as attorney fees, accounting fees, insurance commissions, or engineering fees may not make his wife a partner and have his personal service earnings taxed as partnership income. Among the cases are *Mead* v. *Commissioner,* 131 Fed. (2d) 323; *Schroder* v. *Commissioner,* 134 Fed. (2d) 346; *Earp* v. *Jones,* 131 Fed. (2d) 292; *Tinkoff* v. *Commissioner,* 120 Fed. (2d) 564, affirming Board of Tax Appeals memorandum opinion; *Thomas M. McIntyre,* 37 B.T.A. 812; *Harry C. Fisher,* 29 B.T.A. 1041; affd., 74 Fed. (2d) 1014.

However, in each of the cases cited the personal services of the husband were either entirely responsible for the production of the income, or the capital supplied by the wife, usually by gift from the husband, was not an important factor in the production of the income. We do not think the statement quoted above or the cases cited in support thereof intended to lay down a rule that under no circumstances could a wife whose services contributed materially to the production of earnings from personal services rendered by her husband be recognized as his partner for tax purposes. The teachings of the *Tower* and *Culbertson* cases contradict such a rule and, while they did

not involve income from personal services, it would seem to be inherent in the rationale of those cases that if either the capital or services contributed by a wife to a bona fide partnership are a material factor in producing the income of the partnership, the partnership will be recognized for tax purposes even though the income is of a personal service nature, and even though it is in the form of professional fees.

Finding that the partnership between Harold and Beulah meets the qualifications for a partnership under the definitions contained in the Internal Revenue Code and in the *Culbertson* and other cases, and perceiving no reason under the tax law why it should not be recognized as a partnership for purposes of reporting its income on a fiscal year basis, we conclude that the partnership was bona fide and valid and that no part of the income of the partnership for its fiscal year beginning April 1, 1953, and ending March 31, 1954, is taxable to Harold or Beulah as community income for the calendar year 1953.

*Decision will be entered for the petitioners.*