SINGLETARY v. COMMISSIONER OF IN-
TERNAL REVENUE.

No. 11573.

Circuit Court of Appeals, Fifth Circuit.

May 14, 1946.

Philip H. Alston, of Atlanta, Ga., and S. P. Cain, of Cairo, Ga., for petitioner.

Maryhelen Wigle, A. F. Prescott, and S. Dee Hanson, Sp. Assts. to Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington D. C., for respondent.

Before HOLMES, McCORD, and WAL-
LER, Circuit Judges.

WALLER, Circuit Judge.

The subject matter of this case is the income tax consequences of a family partnership which, in 1940, was composed of the husband and wife, and, in 1941, was enlarged to include also the father and mother of the husband.

Lewis Hall Singletary, the taxpayer, and his wife, Mildred, married in 1929, before and after which time she worked as a teacher and as a secretary while he ran a filling station. From their joint earnings they acquired a home, and from their joint savings account of $300 or $400 and a loan of $1000 secured by indorsement of the taxpayer's father, the husband bought a filling station in May, 1936. The wife kept the books, looked after the collections, and attended the office. The business grew to the extent that several filling stations were bought out of the earnings of the business. Three years later the husband and wife executed formal articles of partnership evidencing the ownership of the wife of one-half interest in the business. The husband reported it as a gift and paid the tax thereon. Prior to the execution of the articles of partnership on January 3, 1939, the husband and wife had kept a joint bank account. Thereafter, they kept separate bank accounts and made several separate investments from the profits that

each derived from the business, for instance, the husband acquired an oil business in North Carolina, and the wife, in partnership with a brother-in-law, acquired an oil business in Quincy, Florida. Together they acquired a farm, each being named as a grantee. About January 1, 1941, the father and mother of the taxpayer, according to articles of partnership duly executed, were taken in as partners for a recited consideration of $20,000 evidenced by note and secured by mortgages on property of the father and on some farm property of the mother. The note was fully paid in 1944 out of the profits of the business. The father and son had an understanding that upon the death of the father he would restore by his will his interest in the filling station to the son. Neither the mother nor the father performed services of any consequence in carrying on the affairs of the partnership.

Taxpayer continued to be the general manager and looked after the business. It appears during that during 1940 and 1941, the tax years in question, the wife of the taxpayer had ceased to work at the filling station in order to give birth to, and care for, a baby.

The Tax Court held, 5 T.C. 365, with six judges dissenting, that neither the 1940 partnership between the taxpayer and his wife nor the 1941 partnership between the taxpayer, his wife, father, and mother was valid for income tax purposes, and that the entire income from the business should be charged to the taxpayer, Lewis Hall Singletary.

■ The issue is a factual one as to whether or not the father and mother were partners in reality or merely in name. The absence of the payment of any actual money into the firm by the father and mother except out of its earnings; the absence of any contribution on their part to the control or management of the business or in carrying on the business of the partnership; the agreement of the father to return, upon his death, his interest in the partnership to the son by will; the lack of worthwhile experience by either the father or mother in carrying on such business; are all circumstances which preclude us

from saying that this finding of the Tax Court was without substantial support, and the finding in this respect will not be disturbed.

We think the case stands differently, though, in respect to the business relationship between the taxpayer and his wife. It is without dispute that both the husband and the wife worked before and after their marriage, and their earnings were put to a common purpose. From these joint earnings they acquired a home and had some $300 or $400 in a savings account. With these savings and $1,000 which the husband borrowed on his father's endorsement, the taxpayer acquired the first filling station in 1936. Part of the earnings that went into the acquisition of the filling station belonged to the wife. From the time of the acquisition of the station until the birth of her baby, which occurred after the execution of the articles of partnership, the wife worked regularly keeping the books, looking after the office, checking reports, and collecting accounts. The fact that her money and most of her services were contributed to the business before the drafting of articles of partnership instead of at the time of the making of such articles would seem to be immaterial. The partnership received and retained the benefits of such funds and was still receiving some services when the partnership was formed.

■ The undisputed testimony of the husband is that the wife helped him in checking filling stations in 1940 and 1941; that she had always helped him but that she had not worked regularly since the partnership and the oncoming of her second baby. In Commissioner v. Tower, 66 S.Ct. 532, the Supreme Court held that a wife and husband may become partners for tax, as for other, purposes if she either "invests capital originating with her or substantially contributes to the control or management of the business or otherwise performs vital additional services or does all of these things."

Part of the $300 or $400 was money that originated with the wife which, with the $1,000 borrowed and paid back out of its earnings, started the enterprise. Without doubt the wife performed vital services

from the beginning of the business until after the formal articles of partnership were executed, when she ceased the regular performance of some of these services because the birth of her baby limited her time in 1940 and 1941, according to her undisputed testimony.

■ The money contributed, and the services performed by the wife, were such as would have compelled the conclusion that she complied with every attribute of a partner that the case of Commissioner v. Tower, supra, demands, before, and for a time after, the partnership agreement was executed. It certainly was not the purpose of the partnership agreement to limit either her interest or her functions. Before the articles were signed she had authority to draw checks just as she did after the partnership. She had helped to run the business and to earn its profits. If the facts were such beforehand as to establish the relation of a partnership between husband and wife for tax purposes, such partnership would surely not be dissolved by the incident of one of the co-partners giving birth to a baby.[1]

■ The undisputed facts in this case clearly show that the taxpayer and wife were "carrying on business in partnership" during the tax years in question even if one of the partners, after having acquired partnership rights, had to stay at home and rock a cradle.

A partnership between husband and wife wherein there is an investment of capital that originated with her and substantial services toward its management and control are rendered by her is not ipso facto dissolved because in the course of human events the wife has to take time out for the purpose of having and caring for a baby.

The judgment of the Tax Court insofar as the invalidity for tax purposes of a partnership in which B. E. Singletary ond Lena Pilcher Singletary were members is affirmed, but the judgment of the Tax Court insofar as it adjudged the absence of such a partnership as between Lewis Hall Singletary and wife, Mildred S. Singletary, is reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Affirmed in part and reversed in part.

---

[1] Mr. Singletary, after having testified as to the work done by his wife prior to the partnership, further testified:

"My wife helped some in checking the filling stations that we two were operating in 1941 under the partnership agreement involved here. She helped some, periodically, and does now, yes sir—oh, in 1940 she did some. I don't recall just what amount. She has always helped some but not regular now."

On being asked what attention she gave to the partnership in 1940, the wife testified:

"Well, about that time I had a baby girl who came and my time was limited along then. But other than checking the station with my husband—in other words, I had to leave the office. Prior to that time I did do some office work. I did not do any during 1940 and 1941."