THORREZ et al. v. COMMISSIONER OF
INTERNAL REVENUE.
No. 10121.

Circuit Court of Appeals, Sixth Circuit.
June 1, 1946.

J. Adrian Rosenburg, of Jackson, Mich., (Rosenburg, Painter & Navarre, of Jackson, Mich., of counsel), for petitioners.

Sewall Key, J. Louis Monarch, and Lee A. Jackson, all of Washington, D. C., for respondent.

Before HICKS, SIMONS and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The petitioners seek a review of rulings of the Tax Court which upheld in each instance a deficiency income tax assessment by the Commissioner of Internal Revenue for the calendar year 1941. A separate petition was filed by each of the petitioners herein in the Tax Court, but in order to facilitate the trial and hearing the cases were there consolidated and have been so consolidated in this review. The cases again present the question of income tax liability resulting from the creation of a family partnership.

The Michner Plating Company, the partnership involved, was organized in September, 1936. The original partners were Camiel Thorrez and Joseph Michner, two of the petitioners herein, and a third individual, John Piniewski. Each of the three partners made an initial capital contribution of $2,000 to the business. On December 3, 1938, Edward A. Forner, another of the petitioners herein was admitted as a partner. He contributed $2,000 in cash and also his one-half interest in the assets of another metal plating business known as the Chromium Plating Corporation. The

other one-half interest in the assets of that corporation was owned by Michner Plating Company and was contributed to the new partnership by the three other parties. On August 31, 1940, Walter Michner, the fourth petitioner herein, who was a son of Joseph Michner and had worked for the Company since its organization, was admitted to membership. He was required to make a capital contribution of $2,000 to the business, although a one-fifth interest in the business at that time was worth considerably more than that amount. On November 23, 1940, Michner Plating Company acquired by merger all of the assets of another metal plating company, Jackson Chromium Plating Company, which was also a partnership and at the time of the merger was owned by the partners in Michner Plating Company. In the latter part of December, 1940, the other partners in Michner Plating Company bought out the interest of the fifth partner, John Piniewski, for $10,000.

On January 2, 1941, the four partners being the petitioners in these actions, executed an agreement which purported to authorize each of them to transfer portions of their partnership interest to their wives and children. The agreement provided that the four partners should retain complete management and control over the partnership and that no wife or child could dispose of his or her interest without offering it first to the partner from whom it was acquired, if he should be a partner in the business, and then to the other partners at its appraised "fair value." If none of such partners should desire to purchase the interest it might then be offered at the appraised value "to anyone acceptable to the remaining partners."

On the following day, January 3, 1941, another agreement, styled "Articles of Co-Partnership," was executed by the petitioners herein as parties of the first part and the members of their respective families referred to in the agreement of January 2, 1941, as parties of the second part. This agreement referred to the previous agreement and then recited that whereas each of the parties of the first part had made such transfers to the members of their families and whereas the parties of the second part were desirous of becoming members of the partnership, and the parties of the first part were desirous of having them do so, therefore all of the parties did enter into a co-partnership for the purpose of carrying on a general metal plating business under the firm name of Michner Plating Company, being a successor to the co-partnership heretofore carried on under that style and firm name by the parties of the first part. Each of the four families had a 25% interest in the partnership. The interest of the Thorrez family was divided equally between Camiel Thorrez, his wife and three sons. The Walter Michner interest was divided equally between Walter Michner and his wife, Marie Michner. The Joseph Michner interest was divided equally between Joseph Michner, his wife Lottie Michner and a daughter. The Forner interest was divided equally between Edward A. Forner, his wife and two daughters. The partnership accordingly comprised 14 partners. As a contribution to the capital of the partnership the parties were to contribute their respective undivided percentage interests as above set out in the assets of the Michner Plating Company. The articles provided that the control and management of the partnership should be exercised by the parties of the first part and that no share in the control and management of the partnership should be exercised by any of the parties of the second part; that Joseph and Walter Michner should devote their full time to the business with the former acting as general manager, and should receive salaries of $250 and $200 a month respectively, plus bonuses based on a percentage of certain of the profits; that Camiel Thorrez and Edward A. Forner should devote only so much of their time to the business as they saw fit; that all major policies affecting the business should be determined by all of the partners, but that no contracts or transactions on behalf of the partnership should be made by any of the new partners; that none of the parties of the second part could dispose of his or her interest without first offering it to the transferor from whom it was received, then to the other tranferees of such transferor as a group, and then to the other parties of the first part, at its then appraised

value, and if said options to purchase were not exercised the partner desiring to dispose of his interest might do so to anyone acceptable to the remaining partners; and that each partner should share in all the profits and losses of the business in proportion to his respective interest. They further provided that proper books and records should be kept, for a partnership bank account, and for a distribution of the net profits of the business semiannually unless by mutual agreement they were left in the business. The partnership was to continue for a period of twenty years unless earlier dissolved by mutual agreement, and upon its termination the assets were to be distributed to the partners in proportion to their respective interests.

On January 1, 1941, Joseph Michner, Camiel Thorrez and Edward A. Forner were equal partners in another metal plating business known as Mayo Hard Chrome Plating Company and were also the owners, with Walter Michner, of all of the capital stock of a corporation known as Anodizing Co. of Jackson, Inc. Prior to April 15, 1941, the stockholders of the last named company transferred portions of their holdings in the capital stock of the company to members of their respective families in the same proportion as their undivided interest in Michner Plating Company under the partnership agreement of January 3, 1941. On April 15, 1941, all of the assets of the corporation were transferred to Michner Plating Company and the corporation was dissolved. All of the assets of Mayo Hard Chrome Plating Company were transferred to Michner Plating Company on May 1, 1941.

In their gift tax returns for 1941 petitioners reported gifts to their wives and children of the above stated undivided interests in the Michner Plating Company. Gifts of like fractional interests in the Anodizing Co. of Jackson, Inc., were also reported in the gift tax returns. None of the gift tax returns showed any tax due.

The Company's 1941 income tax return showed a gross income of $265,817.20 and a net income of $178,095.16. All of the 14 alleged partners filed separate returns for 1941 in which each reported his or her distributable share of the partnership earnings, computed in accordance with the partnership agreement. The Commissioner ruled that the petitioners were taxable under Section 22(a), 26 U.S.C.A.Int.Rev. Code, § 22(a), on all of the partnership's earnings, reduced by wages paid to Lottie Michner and some others for services performed. Deficiency assessments followed against the petitioners as follows: Camiel Thorrez $18,661.57, Joseph Michner $16,235.62, Walter Michner $9,935.92 and Edward A. Forner $15,782.68. Each deficiency assessment was thereafter affirmed by the Tax Court.

Joseph Michner has spent most of his working life in the metal plating business. His wife Lottie worked with him for a number of years before the Michner Plating Company was organized in 1936. She furnished one-half of the $2,000 which Joseph Michner contributed to the business at that time. She began working for the Michner Plating Company when it was first organized and has continued to do so up to the present time. She has always received pay for her services at a regular rate of compensation. She urged from time to time that she be made a partner, but the other partners would not consent to a further dilution of their interests in the business. They insisted that if Lottie was to be admitted to the partnership they should be permitted to "bring in" their wives and children as was finally done. Of the funds which she received from the partnership, some were used to pay income taxes, some were put into a house which she and her husband purchased, and some were placed in investments and in savings accounts. Joseph Michner's daughter was a minor on January 3, 1941. Marie Michner, wife of Walter, worked at the plant occasionally before her children were born and was paid for her services. She used the money which she received from the partnership to pay income taxes, make payments on a home and for certain investments. Neither the wife nor any of the three sons of Camiel Thorrez ever performed any services for the partnership. They used the money received from the partnership to pay income taxes, buy war

bonds and in making investments. Neither the wife nor the daughter of Edward A. Forner ever performed any services of note on behalf of the partnership. The daughters were twins and were 16 years of age in 1941. Some of the funds which the wife and daughters received from the partnership were loaned to Forner, who later repaid the loans with interest, and some were invested in war bonds, securities and real estate.

◼ The petitions for review and the petitioners' brief in support thereof were filed before the recent decisions of the Supreme Court in Commissioner v. Tower, 66 S.Ct. 532; and Lusthaus v. Commissioner, 66 S.Ct. 539. The opinions in those cases answer the arguments presented in the original brief for the petitioners. Since then the petitioners have filed a supplemental brief in which they point out the factual differences between those cases and the present cases and urge upon this Court that such differences prevent these cases from falling within the scope of those rulings. Certain factual differences exist, as necessarily exist in most cases. But it seems clear that such differences are immaterial and do not affect the fundamental facts controlling the decision. In the Tower case the Supreme Court held that the husband and wife who had formed the family partnership therein involved did not intend to carry on business as a partnership, that their intention in this respect was a question of fact to be determined from the testimony disclosed by their agreement, considered as a whole, and by their conduct in execution of its provisions, and that this finding of fact was supported by the evidence and was final. The Court pointed out, in reviewing the evidence, that where the wife invests no capital originating with her, does not share in the management and control of the business, and contributes no vital additional service, and where the income distributed to the wife from the partnership business is used by her only for purposes of buying and paying for the type of things she had bought for herself, home and family before the partnership was formed, so that the result of the so-called partnership was a mere paper re-allocation of income among the family members, such evidence was sufficient to support the Tax Court's finding that the wife was not a partner in the business. The Court held this to be the rule for income tax purposes regardless of the validity of the partnership for partnership purposes under the law of the state where it was created. The Court also held that it was immaterial whether the gift from husband to wife was a complete or incomplete one. The Tax Court found in the present cases that the petitioners failed to create a bona fide business partnership and that their real intention was to divide among themselves and their wives and children the profits of the business so as to reduce taxes. In our opinion, under the rulings in the Tower and Lusthaus cases, this finding is supported by the evidence and is decisive of the cases. Lowry and Sligh v. Commissioner, 6 Cir., 154 F.2d 448; Camfield v. Commissioner, 6 Cir., 154 F.2d 1016.

◼ The petitioners complain of the ruling of the Tax Court in excluding evidence offered by them to the effect that in 1944 discord arose between the Michners and the Forners and that a division was made of the business at that time and new partnerships formed. They contend that this had an important bearing upon the question of whether or not the petitioners intended to form a valid partnership in 1941. The evidence related to an event which occurred three years subsequent to the tax year herein involved. Its bearing upon the issue was remote. In any event, the Supreme Court ruled in the Tower case, supra, that although a partnership may be valid under state law it may nevertheless be invalid for Federal tax purposes. The Tax Court did not abuse its discretion in excluding this offered evidence.

◼ Petitioners urge that regardless of the ruling with respect to the other partners, Lottie Michner, wife of Joseph Michner, was a genuine co-partner and that Joseph Michner should not be charged with the distributable share of profits credited to her. They point to her continuous employment by the partnership and to the fact that she contributed one-half of the $2,000

which Joseph Michner originally contributed to the company when he became a partner. This original contribution, however, was more than four years before the time when she claims to have been admitted as a partner. The evidence does not definitely show how it was treated by the parties, but apparently it was a gift by Lottie to her husband, possibly a loan. Certainly it was not a direct contribution by her to the partnership on her own behalf. Her services were similar to those rendered by other employees. Her efforts over a period of time to be admitted as a bona fide partner were unsuccessful. Her final admission was not on the basis of her services to the partnership and involved no additional contribution of capital, but was on the same basis as existed in the cases of the other members of the families of the respective partners. While her situation is somewhat stronger in her favor than in the other cases, yet the evidence appears amply sufficient under the rulings in the Tower and Lusthaus cases to support the ruling of the Tax Court that for Federal tax purposes she was not a bona fide partner.

The rulings of the Tax Court are accordingly affirmed in each instance.