### SMITH v. HENSLEE, Collector of Internal Revenue.

### Civ. No. 710.

District Court, M. D. Tennessee, Nashville Division.

July 24, 1947.

F. E. Hagler and Ed. M. Lowrance, both of Memphis, Tenn., for plaintiff.

A. O. Denning, Asst. U. S. Atty., of Nashville, Tenn., and Courtnay C. Hamilton, Sp. Atty., Department of Justice, of Washington, D. C., for defendant.

DAVIES, District Judge.

The above entitled cause was heard before the Court on the 19th day of May, 1947.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

### Findings of Fact

This is a suit brought by the taxpayer Frederick Smith to recover a part of the income taxes paid by him for the calender years 1940 and 1941 to the defendant Collector of Internal Revenue, on the theory that such taxes were unlawfully assessed and illegally collected.

The following questions are presented:

1. Whether the Commissioner of Internal Revenue erred in including in the taxpayer's gross income for the calendar years 1940 and 1941 the amounts received in those years respectively by the Trustee of a trust established by the taxpayer pursuant to a divorce settlement, providing for the support and maintenance of the taxpayer's divorced wife and one of the taxpayer's minor daughters, to the extent that the annual income from the trust corpus was guaranteed by the taxpayer.

2. Whether the taxpayer is taxable on income received by his wife from an alleged partnership known as "Toddle Houses" or Toddle House Operating Company.

3. Whether certain expenditures made by the taxpayer in connection with his yacht were properly included by the taxpayer in the adjusted basis of the yacht, in computing a capital gain from the sale of the yacht in the year 1940.

## As to the First Question

The taxpayer and the then wife, Charlotte Clark Smith, were on April 18, 1940, contemplating a separation and divorce. On that date they entered into a formal agreement as to a property settlement and to fix and determine the custody, support and control of their children Charlotte Fredette Smith and Laura Ann Smith, and for the continuing support of Charlotte Clark Smith and their minor daughter Charlotte Fredette Smith. The taxpayer in the settlement agreement promised to establish a trust in which the First National Bank of Memphis, Tennessee, would be named and designated as trustee for Charlotte Clark Smith and Charlotte Fredette Smith, and to convey to said trustee certain properties therein described. Among other properties to be conveyed to the trustee were five thousand shares of the common stock of the Greyhound Corporation, the income from which was to be paid to Charlotte Clark Smith for her support and the support of Charlotte Fredette Smith. The said settlement agreement, among other things, provided as follows: "That

first party guarantees that, during each of the first five years of such trust, the gross income by way of dividends from that five thousand (5000) shares of common stock of The Greyhound Corporation comprising the trust estate will not be less than Six Thousand ($6000.00) Dollars per annum, and if in any one of such first five years the said stock shall fail to gross by way of dividends the sum of $6000.00, the first party on demand of the Trustee shall pay to the Trustee a sum sufficient to bring up such income to $6000.00 for that year; it being further understood that such income of $6000.00 per annum is to be available to Charlotte Clark Smith at the rate of Five Hundred ($500.00) Dollars per month, payable semi-monthly, and that if the necessary funds are not available to the Trustee from dividends upon such stock, the first party will supply any deficiency but shall be reimbursed by the Trustee for such advances out of any subsequent dividends from such stock in excess of $6000.00 per annum; and it also being understood that during the first five years of such trust, or so long as the guarantee of the first party, with respect to said stock attaining a value of $125,000.00 and producing an income of $6000.00 per annum, shall still be in effect, the said stock of The Greyhound Corporation placed in trust shall not be sold or disposed of by the Trustee without the written consent of the first party."

Pursuant to said settlement agreement of April 18, 1940, the taxpayer on May 3, 1940, conveyed to the First National Bank of Memphis, a bank corporation of the City of Memphis, Tennessee, the properties described in the settlement agreement of April 18, 1940, including the 5000 shares of the common capital stock of the Greyhound Corporation. The trust agreement provides, inter alia, as follows: "The Settlor, acknowledging receipt from the beneficiary Charlotte Clark Smith of a valuable consideration, hereby further guarantees to the Trustee, and to Charlotte Clark Smith and Charlotte Fredette Smith that, during a period of five years from and after the date hereof, that said five thousand shares of the common stock of the Greyhound Corporation which is herein

364

transferred to the Trustee as part of the principal of the trust estate, together with any additions thereto by way of stock dividends, stock splits or otherwise, will produce in each period of twelve months a gross income in dividends (exclusive of stock dividends) of not less than Six Thousand ($6000.00) Dollars; and the Settlor agrees that, at the end of each twelve month period, during such term of five years, he will on demand of the Trustee pay to the Trustee in cash any sum which may be necessary to make up the difference between the gross income in dividends (exclusive of stock dividends) from such original five thousand shares, together with any additions thereto, and the sum of $6000.00; and the Settlor further agrees and undertakes that during such five year period such gross income from said stock shall be made available in the hands of the Trustee for payment to Charlotte Clark Smith semi-monthly, so that the Trustee may be able to pay to Charlotte Clark Smith the said income of $500.00 per month (less any deductions for expenses, taxes, etc.) semi-monthly, and that the Settlor will, at any time that the necessary gross funds are not available to the Trustee from such stock, supply any deficiency on demand of the Trustee, but shall be reimbursed by the Trustee for any such advances out of any subsequent income from such stock in excess of $6000.00 for any twelve-month period."

During the calendar year 1940 the Greyhound Company stock produced and the Trustee received income therefrom of $4872.92, and for the calendar year 1941 the sum of $5387.86. In one of these years the taxpayer contributed between $800.00 and $1200.00 in order to bring the income from the Greyhound Company stock up to and equal to the sum of the $6000.00 per annum which he had guaranteed, and which the Court finds was to satisfy his continuing obligation under the settlement agreement and the trust agreement referred to.

## As to the Second Question

Shortly previous to April 1, 1941, a partnership was formed under the name of Toddle House Operating Company. The partners consisted of the taxpayer, his brother and two other individuals, one of whom acted as General Manager of the enterprise, for which he was paid a salary. Each member of the partnership except the taxpayer owned a twenty percent interest in the enterprise. The taxpayer owned a forty percent interest. On April 1, 1941, the taxpayer transferred or is alleged to have transferred to his then wife Dorothy Dickman Smith one-half of his forty percent interest in the partnership for the purported consideration of $9971.30, and thereupon a new partnership agreement was drawn up between the five partners. Mrs. Dorothy Dickman Smith was a signatory to this new contract. At that time it was the intention and plan of the taxpayer to divide his holdings in the partnership between himself and his wife in order to reduce the income taxes due to the United States, and the Court finds as a fact that it was not the intention of the taxpayer and his then wife to join together for the purpose of carrying on the business of Toddle House Operating Company. The purported consideration for the transfer by the taxpayer of one-half of his forty percent interest in Toddle House Operating Company was paid by the wife Dorothy Dickman Smith borrowing from the National Bank of Commerce the sum of $10,000.00 on her note to said bank, which was secured solely by the taxpayer's endorsement of the note. At that time Mrs. Dorothy Dickman Smith owned some real estate in another state, the value of which is not disclosed by the evidence. In 1941 Mrs. Dorothy Dickman Smith obtained a divorce from the taxpayer, and prior thereto under a settlement agreement between the taxpayer and Mrs. Dorothy Dickman Smith, the taxpayer agreed to and did pay off the note to the National Bank of Commerce which he had endorsed. Mrs. Dorothy Dickman Smith did not share in the management and control of the business of Toddle House Operating Company, and she contributed or performed no business services whatever for the company, nor did she contribute any capital to the partnership. Insofar as Dorothy Dickman Smith is concerned there was no real partnership within the meaning of the Federal Revenue Laws. Eventually Dorothy Dickman Smith was able to sell her twenty percent interest in the partnership in a subsequent year to the

other partners for $19,000.00, but that sale was after the taxable years here under consideration, and apparently in the year 1943.

### As to the Third Question

Prior to 1940 the taxpayer had purchased a yacht at an original cost of $40,926.00. Subsequently thereto the taxpayer expended by way of certain repairs and additions which increased the total cost to $47,802.62. Among these expenditures were the following items, which were disallowed by the Internal Revenue Agent as a part of the taxpayer's cost basis in computing the profit from the sale of the yacht in the year 1940: pictures, picture frames, flags, pennants, uniforms, and equipment totaling $1095.47. Those items were purchased for the use of that particular yacht and could not have been used on any other yacht, unless a yacht by the name of Avalon, because the name of the yacht was on the different items.

### Conclusions of Law

1. Because of the continuing obligation of the taxpayer in guaranteeing the receipt from the trust corpus of at least $6000.00 each year from the Greyhound Corporation stock, the income of the trust to that extent was the taxable income of the taxpayer. Helvering v. Leonard, 310 U.S. 80, 60 S.Ct. 780, 84 L.Ed. 1087; Friedmann v. Commissioner, 7 Cir., 145 F.2d 594, certiorari denied 324 U.S. 865, 65 S.Ct. 914, 89 L.Ed. 1421.

2. The transfer by the taxpayer of one-half of his forty percent interest in Toddle House Operating Company to his wife Dorothy Dickman Smith was a sham to avoid or reduce the payment of income taxes, and as the new partner Mrs. Dorothy Dickman Smith contributed no service or capital to the enterprise, the income of the partnership to the extent of the taxpayer's forty percent interest therein was that of the taxpayer. Lusthaus v. Commissioner, 1946, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Commissioner v. Francis E. Tower, 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, reversing the 6th Circuit Court of Appeals, 148 F.2d 388; Thorrez v. Commissioner, 6 Cir., 155 F.2d 791.

3. The taxpayer has failed to carry the burden of proof to establish that the Commissioner erred in including in taxpayer's income the income of and from the Greyhound Corporation stock and the partnership income in Toddle House Operating Company, which was paid to the taxpayer's wife Dorothy Dickman Smith.

4. The expenditures made by the taxpayer in connection with the yacht were properly included by the taxpayer in the adjusted cost basis of the yacht in computing the capital gain on its sale in 1940 and the taxpayer is entitled to recover in this case that part of the taxes collected from him in the year 1940 which was occasioned by the disallowance thereof by the Commissioner of Internal Revenue. The amount of such taxes will be computed and included in the judgment entered in favor of the taxpayer and against Lipe Henslee, Collector of Internal Revenue, for the amount so computed together with such costs as are properly taxable against the defendant.

The Court finds further that the defendant Lipe Henslee had probable cause for the collection of all taxes involved herein, and the certificate to that effect will issue if necessary.

Judgment accordingly.