## DAWSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10386.

Circuit Court of Appeals, Sixth Circuit.

Sept. 22, 1947.

Lyall F. Martz and William C. Allee, both of Detroit, Mich. (Lyall F. Martz and William C. Allee, both of Detroit, Mich., on the brief), for petitioner.

Harry Baum, of Washington, D. C. (Sewall Key, Robert N. Anderson, and Harry Baum, all of Washington, D. C., on the brief), for respondent.

Before HICKS, MARTIN, and MILLER, Circuit Judges.

HICKS, Circuit Judge.

Russell B. Dawson seeks a review of the decision of the Tax Court affirming an assessment against him of deficiencies in income taxes for the calendar years of 1939, 1940 and 1941 in the amounts of $18,947.80, $27,937.18 and $92,477.66, respectively.

The petition presents in general the same question previously considered by us in Tower v. Com'r, 6 Cir., 148 F.2d 388; Lowry v. Com'r, 6 Cir., 154 F.2d 448; Thorrez et al. v. Com'r, 6 Cir., 155 F.2d 791, and DeKorse v. Com'r, 6 Cir., 158 F.2d 801, that is, whether business earnings, attributable under partnership agreements to petitioner's wife individually and as trustee for three minor children are taxable as income of the petitioner. The Commissioner and the Tax Court ruled that they were.

Petitioner has been a car dealer in Detroit since 1925. In 1934 he entered the automobile business for himself under the name of "Russ Dawson" and conducted the business as sole proprietor until March 1, 1939, when a partnership was formed under the same name. At that time the business was worth approximately $50,000.00. The members of the partnership were Dawson himself, with a 36% interest; his wife, Virginia, with 30% in her own name and as separate trustee for each of their three minor children, Russell, age 6, Frances, age 5, and Virginia Lee, age 2, with a 10% interest allocated to each trust. A 2% interest each was allocated to Noble S. Balch and Howard Lare, used car manager and sales manager, respectively, each of whom had had lengthy experience in the business under Dawson.

To effect the change, a number of instruments, all dated March 1, 1939, were executed. First, Dawson and his wife executed a trust agreement whereby trusts were created, one each for the three children, in which Dawson agreed to convey certain property and securities to the trusts, and his wife, Virginia, agreed to accept and hold same, including the income, and to invest the same as trustee. She was given broad powers of management without liability for loss or mistake of judgment not due to wilful misconduct or neglect. One half of the corpus was to be paid to the beneficiary when he or she reached the age of twenty-one and the remainder at the attainment of twenty-five years. Second, Dawson executed six Bills of Sale, one to Virginia herself, three to her as trustee, and

one each to Balch and Lare, conveying to each the above noted percentage of " * * * interest in all the assets and properties, together with income and profits accruing therefrom after the date hereof, and including good-will, of the new and used car business heretofore conducted by the undersigned under the name of 'Russ Dawson,' excepting * * * real estate which may have been owned by the undersigned and' used in connection with the said business, which said real estate, if any, is reserved to the undersigned and not included in this bill of sale." Third. All the parties joined in the execution of a Partnership Agreement whereby the percentage of interest and the actual financial interest of each were fixed and wherein certain provisions were made for distribution of income and to take care of the eventualities of death, withdrawal, bankruptcy, etc., and wherein the partnership was given a life of thirty years. Fourth. All the parties executed an agreement providing for ascertainment and distribution of the interest of a partner in the event of death; and finally, each partner joined in the assignment of his interest in the business to "Russ Dawson," the co-partnership.

The partnership agreement was simplified by a document executed on January 2, 1940, but that modification is not material here.

On January 2, 1941, the partnership was dissolved to permit Virginia as an individual to withdraw and was reconstituted with each of the trusts assuming one-third of her interest.

Virginia gave as a reason for her withdrawal, that she had accumulated property of her own which would be liable for the partnership debts, and she decided to get out. The record does not clearly show just how her interest was transferred to the trusts. Dawson thought it was through a bookkeeping transaction· The record is vague as to how she obtained the value of her interest. Lare testified that it was paid off and she testified that the money was left "in there," but that she had removed most of it. Dawson couldn't remember, except that an adjustment was made for her to get the money. Genter, auditor and in charge of the bookkeeping, testified that when she withdrew, her interest was about $45,000.00, but that there was no transfer of assets, that she withdrew that amount as she wanted it.

After this transfer the interests of the partners were, Russell Dawson 36%; Virginia Dawson as trustee for the three minor children, 20% each; Balch 2% and Lare 2%. The children were too young to take part in the business and this was admitted. There was no convincing evidence that Mrs. Dawson participated in the management of the business. She never received any salary, although she testified that she attended some partnership meetings. Dawson, in answer to the question, "Did she voice her opinion on anything. In other words, did she know enough about the business to get in and talk at meetings of the management of the business?" replied, "No, I wouldn't say that she did." Mrs. Dawson on cross-examination, in answer to the question, "Did you do anything at all in the business? Did you work in the business?" replied, "No, I did not."

Lare testified:

"Q. Do you recall anything that was ever put up to Mrs. Dawson, any dispute that ever arose or any question or anything that had to be put up to her? A· I cannot name anything directly, other than financial matters.

"Q. Do you recall anything that happened that came up, with respect to Virginia Dawson as to financial matters, where any dispute arose? A. No, I cannot say that I do, that I can remember distinctly anything of that description. That was a long time ago.

"Q. Can you remember anything even vaguely? A. No."

Virginia Dawson made a number of investments from funds that came to her personally from partnership earnings. These investments were primarily in real estate and most of them were made jointly with her husband, Russell. He was asked how the cost of these joint purchases was charged to the parties, and he replied that it was charged to each drawing account. When asked in what proportion, he replied, "I imagine half." Mrs Dawson testified that none of the income from trusts was used for her own purposes, that none was

used for the maintenance or education of the children but that all of it was invested or placed in savings accounts.

The total partnership profits during the years involved, including amounts paid as compensation to the three active partners, were $89,201.17; $102,943.73 and $236,169.58, respectively.

The Tax Court, following the opinion of the Supreme Court in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 164 A.L.R. 1135, 90 L.Ed. 670 (reversing this court, 148 F.2d 388) and Lusthaus v. Com'r, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679,

" * * * found as a fact that Virginia Dawson, individually and as trustee for the three children's trusts, were not bona fide partners in the business of 'Russ Dawson' during any of the years 1939, 1940 and 1941. They invested no capital originating with them, did not participate in the management or control of the business and contributed no services thereto· Consequently, the respondent did not err in disregarding the partnership and taxing the income to the petitioner."

We conclude that the decision of the Tax Court must be affirmed on the authority of the Tower and Lusthaus cases.

On the very day the first partnership agreement was executed, Dawson executed the Bills of Sale of interest in "Russ Dawson" whereby Virginia individually and as trustee was enabled to become a financial participant in the partnership. Her testimony was that prior to that time she had few cash assets and that her interest in the partnership · was a "gift" from Dawson. Dawson, with Balch and Lare, made all the decisions and conducted the business. Virginia did not contribute any personal services to the partnership and received no salary. As indicated, much of her earnings were invested in real estate jointly with her husband. The record does not indicate in what proportion each contributed to these purchases. Dawson imagined or thought that it was probable that these contributions were on a 50-50 basis, but the facts with reference thereto are not clearly shown. Checks drawn by her for household expenses both before and after the partnership set-up were similar in nature. It is true that the investments in real estate were not in the same class as expenditures for clothes and ordinary family activities, but we cannot say that investments in real estate were not, upon this record, for a family purpose.

In Helvering v. Clifford, 309 U.S. 331, 336, 60 S.Ct. 554, 84 L.Ed. 788, it was said, "For where the head of the household has income in excess of normal needs, it may well make but little difference to him (except income-tax-wise) where portions of that income are routed—so long as it stays in the family group."

From our examination of the record we conclude that it furnishes not only ample and substantial basis to support the decision of the Tax Court, but goes further and compels it.

Laying to one side the question of the validity of the partnership as between Dawson, Balch and Lare (a question not here in issue), we think that the partnership arrangement as between Dawson and his wife, individually and as trustee, was "merely superficial and did not change the husband's economic interest in the business." See, Lusthaus v. Com'r, supra, 327 U.S. at page 297, 66 S.Ct. at page 540, 90 L.Ed. 679; Thorrez v. Com'r, supra, 155 F.2d at page 791; Earp v. Jones, 10 Cir., 131 F.2d 293.

We think the issue as to the trusts is even clearer. The children, of tender age, could not and did not contribute money or services or the exercise of judgment to the partnership. Virginia, as trustee, was given broad powers to invest the income of the business. There was no prohibition against reinvesting the earnings in the business should the need arise. She· testified that she talked over with Dawson the property to be acquired for the trusts, and Sec. 19 of the Trust Agreement specifically provided, " * * * that the powers, rights and obligations of the Trustee as to her discretion in the manner and method of investment of the trust funds and estate and limitation of responsibility as hereinbefore defined and created are to exist only during the lifetime of the Grantor * * *," and that thereafter the trustee was authorized to invest only in certain specified securities, such as Government bonds.

There is a clear inference from Mrs. Dawson's testimony and from the provisions quoted from Sec. 19 that Dawson had not relinquished entire control over the body of the trusts and income inuring thereto· See Miller v. Com'r, 6 Cir., 147 F.2d 189; Steckel v. Com'r, 6 Cir., 154 F.2d 4; and Thorrez v. Com'r, supra.

A large portion of petitoner's brief is devoted to the contention that the Administrative Procedure Act of 1946, Ch. 324, 60 Stat. 237, Title 5 U.S.C.A. Ch. 19 is applicable to a proper review of the case. In Lincoln Electric Co. v. Commissioner, 6 Cir., 162 F.2d 379, we concluded that review of Tax Court decisions is governed by the Administrative Procedure Act, but we found it unnecessary to apply the provisions of the Act to the situation in that case. In this case, the facts are such that we would reach the same conclusion even though our powers of review under the Act, Title 5 U.S.C.A. § 1009(e), were as broad as those urged upon us by petitioner, a question we do not decide.

The decision of the Tax Court is affirmed.