### GRABER v. COMMISSIONER OF INTERNAL REVENUE.
### No. 3672.

United States Court of Appeals Tenth Circuit.

Nov. 12, 1948.

Kenneth L. Smith, of Denver, Colo. (Albert J. Gould, of Denver, Colo., on the brief), for petitioner.

Helen Goodner, of Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen. and George A. Stinson, Ellis N. Slack and Louise Foster, Sp. Assts., on the brief), for respondent.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This action was instituted by the taxpayer, Gil Graber, in the Tax Court, for a redetermination of income tax deficiency assessed against him by the Commissioner for the calendar year ended December 31, 1943. The sole question presented is whether the taxpayer's wife was a bona fide partner of Gil Graber and Company during the taxable year in question. The Tax Court sustained the Commissioner's determination that she was not, and the taxpayer has appealed.

The judgment of the Tax Court is reviewable here "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury * * *". Title 26 U.S.C.A. § 1141(a), as amended by section 36 of Act, approved June 25, 1948, effective September 1, 1948, 80th Congress, 2nd Session, Congressional Service p. A163.

"There can be no question that a wife and husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S.C.A. §§ 181, 182. * * * A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining

whether the partnership is real within the meaning of the federal revenue laws. * * * Transactions between husband and wife calculated to reduce family taxes should always be subjected to special scrutiny." Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 537, 90 L.Ed. 670, 164 A.L.R. 1135. See also Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Thorrez v. Commissioner, 6 Cir., 155 F.2d 791; Weizer v. Commissioner, 6 Cir., 165 F.2d 772.

There is little, if any, dispute on the facts. The taxpayer and his wife were married in 1916, at the ages of twenty-nine and twenty-eight, respectively. The wife was possessed of $2,000.00, accumulated from an inheritance and teaching school. The husband had nothing. They moved to a farm in Wisconsin, and six months thereafter invested the $2,000.00 in cattle, agreeing at that time that they would "always" be partners in the cattle business, and would consult each other concerning the buying and selling of cattle. In 1921, they moved to St. Paul, where taxpayer was employed at the Stockyards on a salary by Rosenstock Brothers to buy and sell cattle, and they later moved to Omaha, Nebraska, where he continued in the same employment. When they moved to Denver in 1931, their joint capital was approximately $5,000.00, which had been carried in various banks in a joint account, or in a safety deposit box. In 1932, the taxpayer opened a personal account in the Denver National Bank for an undisclosed amount from an undisclosed source. He continued his employment with Rosenstock Brothers until about 1935, when he formed a partnership to engage in the cattle business with John Hall, investing $5,000.00 therein from joint funds belonging to him and his wife. In 1937, he discontinued his partnership with Hall and formed another with Jim Miller, investing approximately $5,000.00 in that venture. Taxpayer's wife was not a member of either partnership, but they continued to buy and sell cattle together independently of his partnership arrangements with either Hall or Miller.

During all of this time, taxpayer and his wife traveled together, usually in an automobile. She kept a record of the cattle purchased, answered the telephone, recording and relaying conversations to her husband concerning prospective sales and purchases of cattle. They visited in the homes of ranchers, and entertained them in their apartment in Denver in the interest of their business. The wife looked after the bank account; when drafts for the sale of cattle were paid, she relayed the information to her husband in order that such amounts might again be used to purchase additional cattle, and she handled other details incident to the conduct of the business of buying cattle from the ranchers, and shipping and selling them on the market at the Stock Exchange in Denver. In October 1938, the taxpayer closed his personal account with the Denver National Bank, and opened a joint account with his wife by the deposit of $782.90. In February 1942, this account had increased to $17,168.05, of which $11,177.49 represented profits the taxpayer and his wife realized from "a joint deal with the Rosenstocks." Both parties testified, however, that the bank balances meant nothing because most of their capital was usually invested in cattle.

Early in 1942, the taxpayer and Max Rosenstock began negotiations, looking toward the formation of a limited partnership to engage in the cattle business. At first his wife objected because she wanted him "to go on for himself." Finally, however, it was agreed that they should form the partnership, on the condition that all disputes concerning cattle transactions between the taxpayer and Rosenstock would be settled by Mrs. Graber. Accordingly, on June 16, 1942, the taxpayer and Rosenstock executed a certificate of limited partnership, which was duly recorded on July 10, 1942. Mrs. Graber was not formally included in the partnership for the stated reason that the rules of the Stock Exchange, where the partnership did business, prohibited female members. In April 1942, the taxpayer and his wife had closed out their joint bank account by depositing the balance of $2,951.85 to the personal account of taxpayer. Thereafter another account was opened for Mrs. Graber in the amount of $500.00 for household expenses.

On August 6, 1942, and after the formation of the partnership, the taxpayer drew

a draft on his personal account for the sum of $10,000.00 to invest in the partnership. Both parties testified that this $10,000.00 represented joint funds of the husband and wife, derived from their joint operations. The partnership agreement with Rosenstock provided that each should contribute $10,000.00 in cash, and that Rosenstock should receive one-half of the net profits after deducting an agreed salary to be paid to the taxpayer, who was to have active control of the business.

Very little business was transacted before September 1942, and on September 8 of that year, taxpayer executed an instrument entitled "Transfer of Partnership Interest by Gil Graber", by the terms of which taxpayer formally transferred and assigned to his wife one-half of his interest in the partnership, effective from its inception, valued at $5,000.00. The instrument recited that it was to evidence the "aforesaid gift to my wife. My purpose herein is to make suitable provision for her, recognizing her generosity in heretofore making her property available to me in my business needs, to the end that my wife may become familiar as early as possible with the duties, responsibilities, and burdens as well as the benefits of business ownership." Thereafter, taxpayer filed a gift tax return, on which he reported a gift of this interest to his wife. At the same time, Mrs. Graber filed a donee's information return, acknowledging the said gift. In explanation of this transaction, both the taxpayer and his wife testified in effect that the instrument formally acknowledging the partnership interest of his wife, and the gift tax return, were executed and filed upon the advice of a tax accountant in Sioux City, Iowa, whom they never knew or saw, but who advised them, through Max Rosenstock, that the assignment of the interest and the gift tax return would "simply forestall any question that might arise in the future" concerning Mrs. Graber's interest in the partnership.

Thereafter, in October 1943, the taxpayer, his wife, and Rosenstock, executed a written agreement entitled "Memorandum of Partnership Agreement", in which it was recited that "Whereas, the parties hereto have heretofore formed a general partnership for the conduct of a livestock business * * *", and that it was desirable to express in writing the rights and obligations of the parties with respect to partnership affairs. It was then provided, among other things, that all of the profits and losses should be credited or charged to the capital account of the parties in the respective proportions of 50% to Rosenstock, and 25% each to taxpayer and his wife, and that upon the termination of the partnership, the assets should be distributed in the same proportion. Thereafter and in May, 1943, both the taxpayer and Rosenstock made additional contributions of $5,000.00 to the partnership capital, but the taxpayer testified that the check for the additional contribution, although drawn on his personal bank account, was actually made by him and Mrs. Graber.

During the taxable year in question, Mrs. Graber maintained no home other than an apartment in Denver, and continued to take long trips with her husband, doing most of the driving, because of her husband's diabetic condition. She continued to visit in the homes of ranchers, to promote friendly relations, and otherwise devoted all of her time to her husband and the partnership business.

Before the Tower and Lusthaus cases, we held in Earp v. Jones, 10 Cir., 131 F.2d 292, 294, that a wife who acquired a partnership interest in her husband's insurance business by a contemporaneous gift from her husband, but continued to devote her time to her family, without changing the position of the parties in any way, did not become a bona fide partner. We said that the husband surrendered nothing, but remained the "monarch of all he surveyed." Likewise in Bradshaw v. Commissioner, 10 Cir., 150 F.2d 918, we held that the attempted partnership arrangement was not genuine for tax purposes, because the partnership was merely formal and did not change the economic status of the parties in their family relationship.

A number of cases have applied the formula approved in the Tower and Lusthaus cases to family partnerships under varying circumstances, and with not always consistent results. To illustrate, in Scherf v. Commissioner, 5 Cir., 161 F.2d 495,

one partner gave his two minor daughters each one-sixth interest in the business, the daughters contributing neither capital, skill nor credits. The other partner likewise gave his two adult sons each a one-sixth interest in the partnership, the sons contributing neither capital, skill nor services. The court held that these arrangements were merely a device to divide the income for tax purposes. See also Thorrez v. Commissioner, 6 Cir., 155 F.2d 791. These cases are factually distinguishable from those like Allen v. Knott, 5 Cir., 166 F.2d 798, wherein the husband and wife formed a partnership to operate a business school. Both contributed capital and services; both had a voice in the business policies of the enterprise. Or Singletary v. Commissioner, 5 Cir., 155 F.2d 207, where a husband and wife used their joint savings to purchase a filling station. The wife kept the books, looked after collections, and attended the office. Other stations were purchased, the business prospered, the wife gave birth to two children, and of course was out of the office during those periods. The Tax Court held that because of her absence from the office during pregnancy, and thereafter caring for the babies, she was not a bona fide partner in the business. The Fifth Circuit reversed, holding that the time taken by the wife for the purpose of having and caring for the babies did not ipso facto dissolve the partnership. Or Wilson v. Commissioner, 7 Cir., 161 F.2d 661, 664, wherein the wife contributed the meager sum of $72.00 to commence the business. Both parties contributed the only asset, "namely, hopes and a will to make the hopes come true." The husband didn't have a dollar; both gave substantial services throughout the life of the business. The Seventh Circuit reversed the Tax Court, holding that a bona fide partnership existed. See also Lawton v. Commissioner, 6 Cir., 164 F.2d 380; Weizer v. Commissioner, 6 Cir., 165 F.2d 772; Woosley v. Commissioner, 6 Cir., 168 F.2d 330; Canfield v. Commissioner, 6 Cir., 168 F.2d 907.

In our case, the Tax Court took the view that since the $2,000.00 original investment made by the wife in the cattle business could not be traced through the series of transactions down through the years to the $5,000.00 investment in the partnership, and since any services she performed were rendered directly for the benefit of the taxpayer as his wife, and not in actual furtherance of the partnership, she did not qualify as a bona fide partner for income tax purposes.

■ We think, however, that the facts conclusively show that her interest in the partnership was acquired with funds originating with her. It is true that her original investment of $2,000.00 cannot be traced dollar for dollar, and from one cattle transaction to another, or for that matter from one partnership to another. But the uncontradicted testimony is that the $10,-000.00 investment in Gil Graber and Company represented funds in their joint bank account as late as April 1942, and that the funds in that account were derived from cattle transactions in which they had a joint interest, and which were created by their joint efforts. The so-called gift, as reflected by the gift tax return, was not intended to afford capital for the purpose of buying an interest in the partnership as in other cases. It was for the avowed purpose of acknowledging the wife's interest in the funds which were invested in the partnership. It was filed upon the advice of counsel for the purpose of making explicit the actual relationship between the parties, and while it adds nothing to the vital question of partnership, it does not detract from the controlling realities.

We are convinced that taxpayer's wife contributed not only capital originating with her, but experienced and valuable services in the conduct of the business. The judgment is reversed.