ROBERT B. WEISS and ALMA B. WEISS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weiss v. Commissioner
Docket No. 33027-83
United States Tax Court
T.C. Memo 1990-492; 1990 Tax Ct. Memo LEXIS 544; 60 T.C.M. (CCH) 746; T.C.M. (RIA) 90492; September 12, 1990, Filed *544 Decision will be entered under Rule 155. Sidney A. Soltz, for the petitioners. Theresa E. Mitchell, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 95,390 in petitioners' Federal income taxes for 1979. After concessions, the issues for decision are: (1) whether petitioner Robert B. Weiss' interest in Hawaiian Village Partnership was terminated on November 15, 1979, resulting in (a) the disallowance of claimed partnership losses occurring subsequent to that date, (b) the recognition of capital gain, (c) the disallowance of a claimed investment tax credit for 1979, and (d) recapture of a prior year's investment tax credit; (2) whether petitioners are entitled to claimed deductions for legal and accounting fees; (3) whether petitioners are entitled to deductions claimed with respect to petitioner Alma B. Weiss' Schedule C business activity in excess of the amount respondent allowed; (4) whether petitioner Alma B. Weiss is liable for self-employment tax attributable to her Schedule C business activity; and (5) whether petitioner Alma B. Weiss qualifies for innocent spouse relief under section 6013(e). [1] *545 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Robert B. and Alma B. Weiss, husband and wife, resided in Coral Gables, Florida, at the time they filed their petition. Mr. Weiss (Weiss) is a real estate developer; Mrs. Weiss is a real estate sales agent. During 1979, Mr. Weiss was the sole shareholder and President of Personal Management Services, Inc. Sometime in 1977 or early 1978, Weiss was informed by Gabriel Jollis (Jollis), a real estate broker, that the Hawaiian Village Motel located in Tampa, Florida, was for sale. (Prior to moving to Florida, Weiss had actively engaged in real estate development in the Washington, D.C. metropolitan area. Jollis had previously sold properties in the Washington, D.C. area to Weiss.) After determining that the motel had substantial profit potential, Weiss attempted to syndicate the purchase of the motel through the *546 sale of limited partnership interests; his efforts in this regard were unsuccessful. In late 1978, Jollis contacted David H. Hillman (Hillman) (a CPA having an accounting firm in the Washington, D.C. metropolitan area who was actively engaged in real estate investments through a real estate acquisition and management company known as Southern Management Company) inquiring whether Hillman would be interested in making an investment in the property. After several meetings with Jollis, Hillman began negotiations with Weiss through Jollis. Weiss and Hillman eventually agreed that Hillman would provide limited working capital and obtain financing to purchase the motel and Weiss (who was an experienced motel operator) would manage it. On November 6, 1978, Weiss and Hillman signed a letter of intent confirming their agreement to enter into a partnership to purchase and operate the motel. Thereafter, on December 22, 1978, Weiss, Hillman, Martin Thaler (Thaler) and Melvin Lenkin (Lenkin) formed a general partnership to acquire and operate the motel. (Thaler, a friend and client of Hillman, is an attorney practicing in the Washington, D.C. area; Lenkin is a builder/developer and a former *547 partner of Hillman in Central Management Company, the predecessor of Southern Management Company.) Pursuant to the partnership agreement, the profits and losses of the partnership were to be divided and allocated 50 percent to Weiss and 50 percent equally among Hillman, Thaler, and Lenkin (the Hillman Group). Concurrently with its organization, the newly formed partnership (known as the "Hawaiian Village Partnership") entered into a management agreement with Weiss and Personal Management Services, Inc. As manager, Weiss was responsible for the day-to-day operations of the motel. In exchange for managing the motel, Weiss (through Personal Management Services, Inc.) was to receive 5 percent of the motel's gross income, with a monthly draw of $ 10,000 to be applied against the 5 percent management fee. The management agreement was terminable at the option of the partnership in the event the motel did not show an annual net cash flow (as defined in the management agreement) of at least $ 250,000. Immediately prior to the formation of the Hawaiian Village Partnership, the Hillman Group arranged to borrow $ 1,000,000 from Union First National Bank of Washington (Union First Bank). (Union *548 First Bank was a client of Thaler.) Union First Bank agreed to make a loan in such amount to any partnership which the Hillman Group formed provided that Hillman, Thaler, and Lenkin jointly and severally guaranteed the loan. The loan was made in December 1978 on a 90-day, unsecured basis. In February 1979, the partnership renewed the loan and pledged the motel as security. Paragraph 4 of the partnership agreement provided:
4. CAPITAL CONTRIBUTIONS.
Each of the partners shall contribute and loan to the partnership, as a capital contribution and cash loan thereto, the sums of money set out opposite their signature hereto. [Weiss - $ 300; Hillman - $ 100; Lenkin - $ 100; Thaler - $ 100] The partnership shall also borrow approximately One Million Dollars ($ 1,000,000.00) to carry out the purposes of the partnership, provided, however, that Hillman shall be the only partner required to personally guarantee the terms and conditions of said loan. In the event the stated amount contributed, loan [sic] and borrowed is insufficient to carry out the purposes of the partnership, the partners shall be called upon to loan to the partnership the funds, in proportion to the profits-and-loss percentage *549 interest set forth opposite their signatures hereto, [Weiss - 50%; Hillman 16-2/3%; Lenkin 16-2/3%; Thaler 16-2/3%] necessary to accomplish its purposes. In such an event, the loan to the partnership shall be repaid in full with interest at the rate of ten percent (10%) per annum during the second partnership year. In the event any partner fails to contribute to the partnership his proportionate share of the funds necessary to accomplish the purposes of the partnership or any partnership losses, said partner's rights to participate in any and all partnership decisions shall be forfeited until such time as said monies are paid to the partnership and should said default remain for a period of thirty (30) days, said partner's profit-and-loss percentage interest shall be offered for sale to the remaining partners. The partnership agreement provided that in the event Weiss failed to advance funds to the partnership if called upon to do so or if the management agreement was terminated, Weiss would forfeit his partnership rights and Hillman could appoint another party to manage the motel. The management agreement required Weiss to furnish the partners with monthly reports, including monthly *550 profit and loss statements. Weiss employed an accounting firm in Miami, Florida, to assist in preparing the required reports. Weiss was delinquent in furnishing the partners with the required reports; and by the summer of 1979, Hillman had not received the partnership's financial reports for several months. In late summer 1979, Weiss informed Hillman that the motel was experiencing severe financial difficulties and he had reason to believe that one of the motel's employees was embezzling funds. Weiss told Hillman he needed immediate assistance and asked Hillman to send an accountant from Hillman's firm in Washington, D.C. to assist him. Hillman advised Weiss to replace the accountant Weiss had employed, and Hillman immediately dispatched Edward Bortnick (Bortnick), a partner in Hillman's accounting firm, to Tampa. Within hours after arriving in Tampa, Bortnick informed Hillman that accounting and financial controls at the motel were in disarray. The partnership engaged (with Weiss' consent) Hillman's firm to perform accounting services for the motel. Pursuant to this engagement, Bortnick undertook an on-site study of the accounting systems utilized at the motel. By letter dated *551 September 28, 1979, to the "Partners & Senior Management of Hawaiian Village General Partnership," Bortnick detailed his findings concerning the financial difficulties the motel was experiencing. He determined that the motel needed an immediate infusion of $ 300,000 in cash in order to bring accounts current and to provide working capital. Following receipt of Bortnick's report, Hillman traveled to Tampa to meet with employees of the motel and to personally inspect the books and records. In October 1979, Hillman, on behalf of the partnership, engaged the accounting firm of May, Zima & Company (of Daytona Beach) to conduct an independent analysis of the financial condition of the motel. May, Zima & Company accountants made an on-site review of the financial condition of the motel and prepared a report for the period ending September 30, 1979. The May, Zima & Co. report concluded that (1) the motel was insolvent, (2) there was an increasing cash flow deficit between April and August 1979, and (3) a capital infusion of $ 450,000 was necessary to cover the deficit between current liabilities and current assets. Armed with both Bortnick's and May, Zima & Co.'s reports, as well as his *552 own examination of the financial condition of the motel, Hillman determined that the motel needed an immediate cash infusion. Hillman also decided that the partnership should terminate the management agreement between the partnership and Personal Management Services, Inc. Thereupon, Hillman (on behalf of the partnership) caused a letter to be written by Stephen A. Michael, an attorney for the partnership, dated October 4, 1979, to be hand delivered to Weiss terminating the management agreement. Hillman also caused a letter dated October 5, 1979, to be hand delivered to Weiss informing him that the partnership was making a $ 400,000 loan call (the capital call) from the partners and that pursuant to paragraph 4 of the partnership agreement, Weiss' pro-rata share of the capital call was $ 200,000. To satisfy the obligation of the Hillman group, Hillman made arrangements with the Flagship Bank of Tampa to establish a $ 200,000 line of credit for the motel. The line of credit was secured by a certificate of deposit which Hillman owned. Weiss failed to remit his pro-rata share of the capital call. On October 11, 1979, the Hillman group filed a complaint for damages, injunctive, and other *553 relief against Weiss in the Circuit Court, in and for Hillsborough County, Florida, asking the court to declare that any interest Weiss may own in the partnership be held in constructive trust for the plaintiffs and that Weiss be enjoined from transferring any interest in the partnership pending the declaration of the constructive trust. On January 22, 1981, the Hillman group filed a Supplemental Amendment to the aforementioned complaint stating that they had contributed Weiss' share of the needed capital and thereby acquired his interest in the partnership. The matter is still pending before the Hillsborough County Circuit Court. On November 19, 1979, Weiss was notified by letter that his 50-percent partnership interest had been acquired on November 15, 1979, by the remaining partners (that is, the Hillman group) due to his failure to satisfy the capital call. Weiss argues that his interest in the partnership was not terminated in 1979, and that the actions taken by the Hillman group are nugatory. The Hawaiian Village Partnership filed a partnership return for the period January 1, 1979, through November 15, 1979. Attached to the partnership return were Schedules K-1 for Hillman, *554 Thaler, Lenkin, and Weiss. A separate return was filed in the name of "Hawaiian Village Joint Venture" for the period from November 16, 1979, through December 31, 1979, by the Hillman Group, with Schedules K-1 attached for Hillman, Thaler, and Lenkin. In their individual 1979 return, petitioners claimed $ 233,366 as their distributive share of the Hawaiian Village Partnership loss for the year and a $ 9,958 investment tax credit. (Weiss' distributive share of the partnership's loss from January 1, 1979, to November 15, 1979, as reported on his Schedule K-1, was $ 203,956. He adjusted (increased) the loss by determining the number of days in the period January 1, 1979, through November 15, 1979, (319) and determined the average loss per day ($ 639.36). He then multiplied the average loss per day ($ 639.36) by 365 days and determined that his share of the partnership's loss for the entire year was $ 233,366.) On Schedule C to their 1979 return, petitioners claimed business expenses relative to Mrs. Weiss' real estate sales business in the amount of $ 7,323. On Schedule E to their 1979 return, they claimed an $ 18,854 deduction for "legal & accounting relating to the [Hawaiian Village] *555 partnership." In his notice of deficiency, respondent disallowed $ 29,410 ($ 233,366 - $ 203,956) of the claimed partnership loss (i.e., the amount of loss attributable to the period from November 16, 1979, to December 31, 1979) and disallowed the $ 9,958 investment tax credit. As of November 15, 1979, Weiss' share of partnership liabilities ($ 2,763,078) exceeded his basis in the partnership ($ 2,526,827) by $ 236,251; respondent determined that as a result of the disposition of his partnership interest, Weiss realized a $ 236,251 short-term capital gain. Respondent also (1) disallowed that portion of Mrs. Weiss' claimed Schedule C business expenses in excess of $ 3,432, (2) disallowed all legal and accounting expenses claimed on Schedule E, (3) determined that petitioners were subject to investment tax credit recapture, and (4) determined that Mrs. Weiss was liable for self-employment tax. OPINION 1. Partnership Issues
Weiss contends that his partnership interest was not terminated on November 15, 1979, or at any time during 1979, which is dispositive of the issues in this case relating to the Hawaiian Village Partnership. Federal income tax law, not State law, is controlling in *556 determining whether a partnership exists for Federal tax purposes. Evans v. Commissioner, 447 F.2d 547, 550 (7th Cir. 1971), affg. 54 T.C. 40 (1970); Nichols v. Commissioner, 32 T.C. 1322 (1959). If there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits within a 12-month period, the partnership is considered terminated. Sec. 708(b)(1)(B). In October 1979, all of the partners were called upon to make a loan to the partnership in the aggregate amount of $ 400,000. Weiss failed to supply his $ 200,000 share. In accordance with the terms of the partnership agreement, Weiss' failure to supply his pro rata share of the capital call resulted in a forfeiture of his right to participate in partnership decisions and permitted the remaining partners the right to acquire his 50-percent partnership interest on November 15, 1979. Weiss was notified of the termination on November 19, 1979. Thus, for Federal tax purposes, the Hawaiian Village Partnership terminated on November 15, 1979, when Weiss was ousted, rightly or wrongly, by the other partners by virtue of a 50-percent change in partnership ownership. (a) Post November 15, 1979, Income *557 It has long been established that income must be determined and reported on an annual accounting period. Sec. 441(c); Burnet v. Sanford & Brooks Co., 282 U.S. 359 (1931). Moreover, in determining the year in which income should be reported, consideration cannot be given to what may or may not happen in a subsequent year, but rather what actually occurred during the current year. Barker v. Commissioner, T.C. Memo. 1983-643. Weiss was given notice that the management agreement had been terminated and his partnership interest had been acquired by the other partners. It should have been obvious to Weiss before the end of 1979 that the Hillman Group no longer wished to be his partners; they acted accordingly. Despite the ensuing State court litigation over his expulsion, Weiss was required to file his return based on the facts existing at year end. The tax effect of any conclusion reached in the State court litigation regarding his ouster is best left to the year in which such litigation is concluded. The conditions existing at the end of 1979 were such that Weiss was no longer considered to be a partner. Accordingly, we sustain respondent's disallowance of the claimed partnership *558 loss of $ 29,410. (b) Short-Term Capital Gain
The expulsion of Weiss from the partnership and the assumption of his share of liabilities by the three other partners triggers the recognition of taxable gain to petitioners. Section 752(b) requires that a decrease in a partner's share of partnership liabilities be "considered as a distribution of money to the partner by the partnership." To the extent partnership distributions of money exceed the partner's adjusted basis of his partnership interest, gain must be recognized. Sec. 731(a). Any such distribution is treated as a sale of the distributee partner's interest which, in turn, is a disposition of a capital asset. Secs. 731(a) and 741. Prior to November 15, 1979, Weiss had included 50 percent of the Hawaiian Village Partnership liabilities in the adjusted basis of his partnership interest. Sec. 752(a). The subsequent reduction of his partnership interest from 50 percent to zero (as a result of his ousting from the partnership) concomitantly reduced his share of partnership liabilities to zero. This reduction in Weiss' share of partnership liabilities triggered a deemed cash distribution in the amount of his share of those liabilities *559 ($ 2,763,078) which exceeded the adjusted basis in his partnership interest ($ 2,526,827). Accordingly, petitioners must recognize a capital gain of $ 236,251. The capital gain is a short-term capital gain because Weiss held his partnership interest for less than one year. Sec. 1222. The foregoing result remains unchanged if we analyze the transaction from the perspective of an actual sale of Weiss' partnership interest. When the transferee of property assumes liabilities, or takes property subject to liabilities, the transferor has an amount realized equal to the debt. Commissioner v. Tufts, 461 U.S. 300 (1983); Crane v. Commissioner, 331 U.S. 1 (1947). The debt assumed by the other partners, i.e., the amount realized ($ 2,763,078), exceeded Weiss' basis in his partnership interest ($ 2,526,827) by $ 236,251, resulting in a realized capital gain equal to such amount that must be recognized as a short-term capital gain for tax purposes. Secs. 741, 1001, and 1222. Petitioners argue that Weiss could not have realized a capital gain because he was not relieved of partnership liabilities during 1979. We disagree. [2] *560 Weiss ceased to be associated with the partnership during 1979, and the remaining partners continued its business through a new partnership, *561 Hawaiian Village Joint Venture. Under Florida law, when a partner is expelled and the remaining partners continue the partnership's business, the continuing partnership is liable to creditors of the old partnership. Fla. Stat. Ann. section 620.76(6) (1977) (West); Uniform Partnership Act (U.P.A.) section 41. In our view, the continuation of business by the new partnership, Hawaiian Village Joint Venture, triggered an assumption of liabilities sufficient to cause a decrease in Weiss' share of liabilities under section 752(b). Petitioners also argue that former partners remain individually liable to pre-dissolution partnership creditors. Fla. Stat. Ann. section 620.735 (1977); U.P.A. section 36. Weiss failed to introduce any evidence of specific liabilities for which he was held accountable. [3] *562 Thus, we are not persuaded by this argument. Petitioners also contend that there could be no purchase of Weiss' partnership interest until the remaining partners contributed not only their pro rata share of the $ 400,000 loan call but also Weiss' share of the call. This contention is not supported by the terms of the partnership agreement. (c) 1979 Investment Tax Credit
We next turn to petitioners' distributive share of the investment tax credit claimed in 1979 attributable to property acquired by the partnership. An investment tax credit is available for tangible personal property subject to an allowance for depreciation having a useful life of three years or more. Secs. 38, 46, and 48. In 1979, the partnership first placed qualifying property in service; however, Weiss ceased to be a partner in the partnership. Therefore, as to Weiss, the property was not eligible *563 for an investment tax credit. Consequently, respondent's disallowance of the investment tax credit is sustained. (d) Investment Tax Credit Recapture
Section 47(a)(1) provides for the recapture of all or a portion of the investment credit previously claimed with respect to property which is disposed of, or otherwise ceases to be qualifying property with respect to the taxpayer, before the close of its useful life which was taken into account in determining the investment tax credit. Upon Weiss' expulsion from the partnership, as to him, the property ceased to be qualifying property and petitioners are subject to the recapture of the investment tax credit (which passed through to them from the partnership). [4] *564 2. Legal and Accounting Expenses
The next issue is whether petitioners are entitled to the claimed deductions for legal and accounting expenses. Although they claimed $ 18,854 in fees, petitioners concede $ 2,817 of that amount. Thus, they contend that they are entitled to deduct $ 16,037 (such amount is comprised of $ 10,000 paid to Charles Ruffner during 1979 in connection with legal representation before the IRS for a tax examination for a prior year, $ 2,500 paid to Byron Cherkas as a tax preparation fee and $ 3,537 paid to the law firm of Clark and Dick in connection with the initial representation of Weiss following his ouster from the Hawaiian Village Partnership). Deductions are matters of legislative grace; taxpayers have the burden of establishing that they are entitled to the deductions claimed on their return. Welch v. Helvering, 290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Deputy v. DuPont, 308 U.S. 488 (1940); *565 Rule 142(a). In general, taxpayers are required to substantiate claimed deductions and credits by maintaining proper records. Sec. 1.6001-1(c), Income Tax Regs. Under certain circumstances, where taxpayers have no records to substantiate their claimed deductions, we are permitted to estimate expenses when we are convinced that such expenses have been paid or incurred. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Petitioners did not have cancelled checks to substantiate any of the claimed expenses because their records were lost during moves made since 1980. Nevertheless, we are satisfied that they incurred legal fees in connection with an IRS examination involving a tax year prior to 1979. As any estimate must be weighed heavily against petitioners, Cohan v. Commissioner, supra, we find that $ 2,500 is deductible. Further, we find that in 1979 petitioners paid an accountant for preparation of their 1978 tax return. Weiss did not remember how much of the fee was for preparation of the return. Under Cohan, we find that $ 625 is deductible. As to the remaining $ 3,537 legal fee, Weiss could not specifically recall that the fee was paid for services relating to his ouster *566 from the partnership. By his own admission, he had used the Clark and Dick law firm over a number of years on various legal matters. We find that petitioners have not met their burden of establishing entitlement to the claimed deduction. Accordingly, we sustain respondent as to this amount. 3. Claimed Business Expenses
We next turn to whether respondent properly disallowed Schedule C deductions attributable to Alma Weiss' real estate sales business. In his notice of deficiency, respondent allowed $ 3,432 of the total claimed deductions of $ 7,323. Petitioners failed to address this issue at trial or on brief. Accordingly, petitioners are deemed to have conceded the issue. 4. Self-Employment Tax
Respondent determined that petitioner Alma Weiss is liable for self-employment tax attributable to her real estate sales business. Section 1401(a) imposes a tax on the self-employment income of every individual. Self-employment income includes an individual's gross income from any trade or business carried on by such individual less the deductions properly attributable thereto. Sec. 1402(a) and (b). Petitioners did not address this issue at trial or on brief; thus, they are deemed to *567 have conceded such issue. 5. Innocent Spouse Claim
The final issue is whether Mrs. Weiss qualifies for relief from liability as an "innocent spouse" under section 6013. In general, a husband and wife are jointly and severally liable for the amount of tax due when they file a joint return. Sec. 6013(d)(3). An exception to this rule is available for innocent spouses under section 6013(e). Section 6013(e) provides: (e) Spouse Relieved of Liability in Certain Cases. -- (1) In General. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) *568 for such taxable year to the extent such liability is attributable to such substantial understatement. The burden of proof is on the taxpayer to establish that she satisfies each requirement of section 6013(e)(1) and failure to satisfy any one of them precludes relief. Stevens v. Commissioner, 872 F.2d 1499, 1501 (11th Cir. 1989), affg. a Memorandum Opinion of this Court; Bokum v. Commissioner, 94 T.C. 126, 138 (1990). The parties do not dispute that the requirements of sections 6013(e)(1)(A) and (B) have been satisfied. To satisfy the requirement of section 6013(e)(1)(C), a taxpayer must establish that in signing the joint return, he or she did not know or had no reason to know that there was a substantial understatement of tax. The standard applied in determining whether the putative innocent spouse knew or should have known of a substantial understatement of tax is whether a reasonable person under the taxpayer's circumstances at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted. Stevens v. Commissioner, supra, at 1505; Purcell v. Commissioner, 86 T.C. 228, 238 (1986), affd. 826 F.2d 470 (6th Cir. 1987); *569 Bokum v. Commissioner, 94 T.C. at 148. At the time Mrs. Weiss signed the return on September 14, 1980, she knew problems existed between her husband and the other partners and that he had been ousted from the partnership. In fact, the 1979 return she signed contained a statement explaining the partnership termination and that her husband was disregarding the Schedule K-1 (reflecting losses only through November 15, 1979) issued to him and were claiming a loss for the period following his expulsion. Additionally, the deficiencies are, in part, based on the disallowance of a portion of Mrs. Weiss' claimed business expenses and her liability for self-employment taxes. We therefore conclude that at the time Mrs. Weiss signed the return, she either knew or should have known that the liability stated on the return was erroneous. In Bokum v. Commissioner, supra, we were faced with a situation similar to that involved herein. There, the taxpayers misunderstood the effect of the tax laws on the sale of a ranch by petitioner husband's wholly owned subsidiary and subsequent distribution of the sale proceeds to the husband. We found that petitioner wife did not qualify as an innocent spouse *570 because she was aware of the sale and the distribution. Although Mrs. Weiss may not have known of the legal and tax consequences of her husband's partnership transactions, it is clear that she had knowledge of the basic underlying facts when she signed the return. (See McCoy v. Commissioner, 57 T.C. 732, 734 (1972) wherein we stated that section 6013(e) was not designed to abate joint and several liability in such a situation.) Furthermore, she does not assert that her signature on the return was the product of mistake or duress. Therefore, we conclude that Mrs. Weiss has not met the requirements of section 6013(e)(1)(C). To meet the requirements of Section 6013(e)(1)(D), a taxpayer must prove, taking into account all the facts and circumstances, that it would be inequitable to hold him or her liable for the tax liability. We do not perceive any inequity in holding both spouses responsible for the tax liability involved herein. For the most part, the deficiency here arises from petitioners' failure to take into account the tax consequences flowing from Weiss' expulsion from the partnership. While petitioners' perceived injustice stemming from the expulsion may be cause for sympathy, *571 it is not cause for filing an incorrect return. Mrs. Weiss failed to carry her burden of proving that it would be inequitable to hold her liable for the tax liability. Mrs. Weiss failed to satisfy all the requirements of section 6013(e)(1); she is therefore not entitled to innocent spouse relief. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.
2. Petitioner's apparent strategy places reliance on Barker v. Commissioner, T.C. Memo. 1983-643. In Barker, the taxpayer had personally executed a guaranty agreement covering the full amount of a bank loan to a real estate partnership of which he was a partner. The Commissioner determined the deficiency upon relief from this single liability after the taxpayer was ousted from the partnership. We held the Commissioner's determination was erroneous because the taxpayer was not relieved from liability under the guaranty agreement until some year later than the one for which the deficiency was determined. The partnership interest percentage owned by the taxpayer was not disclosed in the opinion, nor was it argued that there had been a 50-percent change in partnership interest during the year of the taxpayer's expulsion automatically terminating the partnership. By contrast, Weiss held a 50-percent ownership interest which automatically terminated the partnership upon his expulsion. Furthermore, as discussed in the text that follows, Weiss has failed to convince us that he remained liable for partnership liabilities after being ousted in November 1979.↩
3. Fla. Stat. Ann. section 620.735(2) provides: (2) A partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partnership continuing the business. The agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business. From the evidence presented at trial, we are convinced that Weiss was exculpated from partnership liabilities by the course of dealings of the continuing partners. This view is reinforced by the failure to produce evidence of specific liabilities for which Weiss was held accountable.↩
4. Of course, petitioners are subject to the recapture of the investment tax credit only if they claimed such credit in one or more prior years. It is not clear from the record whether petitioners ever received the benefit of the 1978 investment credit passed through from the partnership. The 1978 and 1979 returns introduced into evidence indicate that petitioners used the investment tax credit passed through from the partnership in 1978. But there is evidence in the record of prior disagreement as to other tax years to which the credit may have been carried back. We expect the parties to clarify the extent to which petitioners received a benefit from the 1978 investment credit in their Rule 155 computation.